MATTER OF LEON-PEREZ

In Bond Proceedings

A-19570639

*Decided by Board April 8, 1975*

8 CFR 103.6(a)(2) provides, in an appropriate case, for a condition of a bond prohibiting unauthorized employment by an alien. The immigration judge denied respondent's request for removal of the employment condition and respondent appealed from that denial. The case is remanded, with general guidelines that the record of proceedings include among other things: written evidence of the bond condition and the Regional Commissioner's approval thereof; evidence of the impact and dislocation of American workers caused by the alien's employment; if applicable, the numbers of aliens working illegally for the particular employer; Service records or other specific information showing dates of prior unauthorized employment by the respondent; and specific information relating to prior orders of deportation against the alien.

ON BEHALF OF RESPONDENT:    J. C. Codias, Esquire
1252 W. Peachtree Street, N.W.
Atlanta, Georgia 30309

In a decision dated February 18, 1975, the immigration judge denied the respondent's request for removal of the bond condition prohibiting his unauthorized employment in the United States. The respondent has appealed from that decision. The record will be remanded to the immigration judge.

The respondent does not contest the amount of his bond. The only issue on appeal involves the nonemployment rider. Counsel makes various contentions that the imposition of that bond condition violates the due process clause and other provisions of the Constitution.

The authority of the Service to impose a bond condition prohibiting unauthorized employment was at issue in *Matter of Toscano-Rivas*, 14 I. & N. Dec. 523 (A.G. 1974). In that case, the Attorney General found that section 242 and section 103 of the Immigration and Nationality Act gave the Service authority, in some circumstances, to impose a bond condition prohibiting unauthorized employment. The Attorney General expressed a concern, however, that there be appropriate substantive safeguards with respect to the imposition of a condition prohibiting employment. He stated that "before a condition of that nature is im-

posed, there should be a regulation of the Service dealing specifically with the subject" (p. 61). Since there was no such regulation in existence at the time the bond condition in *Toscano-Rivas* was imposed, the Attorney General did not sustain that bond condition.

The Attorney General mentioned several reasons why a specific regulation governing nonemployment riders was necessary: (1) in light of the prior history of nonuse of employment conditions by the Service, a regulation would provide a formal basis for the new action, (2) the regulation would provide guidance for Service personnel in imposing bond conditions and would safeguard against abuse of discretion and undue utilization of such bonds conditions, (3) the regulation would provide a standard for administrative and judicial review, (4) the regulation would provide notice of the nonemployment condition to aliens and employers, and (5) promulgation of the regulation would give the Service an opportunity to obtain the views of interested parties and would thereby help to assure the consideration of various points of view.

In response to the Attorney General's opinion in *Matter of Toscano-Rivas*, the Service has promulgated 8 CFR 103.6(a)(2).[1] This regulation provides for prior approval by the Regional Commissioner of any condition barring unauthorized employment, and it sets forth nine factors to be considered in connection with the imposition of such a condition. Those factors are considered as examples only and are not exclusive. We are satisfied that the regulations set forth in 8 CFR 103.6(a)(2) are in compliance with the opinion of the Attorney General in *Matter of Toscano-Rivas*.

Since the present case arose after the effective date of 8 CFR 103.6(a)(2), the only remaining question is whether that regulation was

---

[1] 8 CFR 103.6(a)(2) provides:

*Bond riders*—(i) *General.* Bond riders shall be prepared on Form I-351 and attached to Form I-352. If a condition to be included in a bond is not on Form I-351, a rider containing the condition shall be executed and forwarded with Form I-352 to the regional commissioner for approval.

(ii) *Condition against unauthorized employment.* In the discretion of the district director and with the prior approval of the regional commissioner, a condition barring unauthorized employment may be included in an appearance and delivery bond in connection with a deportation proceeding.

(iii) *Factors to be considered.* Among the factors to be considered in connection with the imposition of the bond condition barring unauthorized employment are: Safeguarding employment opportunities for United States citizens and legal resident aliens; impact on and dislocation of American workers by alien's employment; the number of aliens involved in performing the unauthorized employment; prior immigration violations relating to acceptance of unauthorized employment by the alien; the likelihood of continued violations with the same employer; the recentness of the alien's arrival in the United States; the acceptance of the unauthorized employment shortly after such arrival; whether there is a reasonable basis for consideration of discretionary relief; whether a spouse or children are dependent on the alien for support, or other equities exist. These factors are intended as examples only and are not exclusive.

240

properly applied here. In considering this question, we are mindful of the fact that bond proceedings, by their very nature, demand flexible procedures in order to prompt determinations may be reached. Consequently, we have always attempted to avoid setting forth rigid procedural or evidentiary requirements which would lessen the ability to arrive at prompt and equitable bond determinations.

On the other hand, we cannot ignore the serious concerns expressed by the Attorney General, and reflected in the regulations, that the utmost care be taken in imposing bond conditions prohibiting employment. Consequently, we are unable to approve of the type of record made below in this case.

Initially, we note that the record contains no copy of the bond condition involved, nor does it contain evidence, other than the trial attorney's oral representation, that the condition has been approved by the Regional Commissioner as specified in 8 CFR 103.6(a)(2)(i) and (ii). While we would not remand the present case for this reason along, we believe that it would be highly desirable to have the record contain extrinsic evidence of the bond condition and the Regional Commissioner's approval.

At the hearing before the immigration judge, the trial attorney discussed the various factors set forth in 8 CFR 103.6(a)(2)(iii). With respect to safeguarding the employment opportunities of United States citizens and lawful permanent residents, and also with respect to the impace and dislocation of American workers caused by the alien's employment, the trial attorney merely asked the immigration judge to take notice of the general state of unemployment in the United States.[2] This does not comply with our reading of the requirements of 8 CFR 103.6 (a)(2)(iii). The regulation evidently contemplates that some effort will be made by the Service to show the employment situation in the particular geographic area involved, and what impact the employment of the alien in question may be expected to have on that situation. Without intending to limit the manner in which such impact might be demonstrated, we note that employment information obtained from federal, state, or local governments would be particularly convincing.

As to the number of aliens involved, the trial attorney alleged that the respondent's employer, Grief Brothers Company, had a long record of hiring illegal aliens extending over the previous seven years. The trial attorney also alleged that over this period as many as 36, and as few as one, of Grief Brothers' total employment had been made up of illegal aliens, and that "[e]very time we go there [Grief Brothers], we have found illegal aliens." The purpose of the regulations governing employment conditions in bonds is not to punish employers for past action in

_____

[2] We note that counsel maintained that there were no citizens or permanent residents in the locality who were willing to perform the work that the respondent evidently was performing.

hiring illegal aliens, nor is it to punish aliens for the past action of employers. We construe the regulation's reference to "the number of aliens involved in performing the unauthorized employment" to relate to the adverse effect on American labor if the respondent is , was, or is likely to become one of a large number of aliens performing unauthorized employment within a particular factory or within a particular industry in a specific geographic location.? If the Service has specific information concerning the number of aliens found performing unauthorized employment in a particular factory or industry, it would be helpful if this information were placed in the record to the extent feasible.

The regulation also refers to prior immigration violations by a particular alien relating to acceptance of unauthorized employment, to the likelihood of continued violations by the alien with the same employer and to the acceptance of unauthorized employment shortly after an alien's arrival in the United States. The trial attorney stated that on two prior occasions the respondent had been apprehended working for the same employer. The trial attorney argued that this demonstrated a pattern of illegal employment with the same employer and a likelihood of continuing illegal employment. Although counsel apparently does not dispute the trial attorney's contentions, the present record should, to the extent possible, contain copies of Service records or other specific information showing prior unauthorized employment by this respondent with particular reference to the date of such employment. It would also be appropriate to have the record contain specific information relating to prior orders of deportation entered against the respondent, since this might have a bearing on apparent eligibility for discretionary relief from deportation, another of the factors listed in 8 CFR 103.6(a)(2)(iii).

Finally, the trial attorney stated that the respondent had no dependents residing in this country and that there were no equities or other factors to consider in the respondent's case. While conceding that the respondent's dependents reside in Mexico, counsel has raised a claim of hardship to the respondent based on the facts of this case. Counsel points out that the respondent is presently also under a $2,000 delivery bond on a criminal charge. Since the criminal charge is apparently not scheduled for determination in the immediate future, and since the Government evidently does not intend to proceed with deportation proceedings until the criminal charges are determined, counsel contends that the respondent will be placed in an untenable position. He will have to choose between violating the employment condition of his immigration bond in order to maintain himself, seeking social assistance, or

[3] In *Matter of Toscano-Rivas*, the Attorney General emphasized that "a basic purpose of the immigration laws is to protect against the displacement of workers in the United States" (p. 58). The specific fact situation at issue in *Toscano-Rivas* was a "flagrant violation of the immigration laws" by a group of at least ten illegal aliens.

absconding and returning to Mexico, thereby forfeiting the bonds in both the criminal and deportation cases. We believe that counsel's contention should have received greater consideration from the immigration judge.

The foregoing comments are designed to deal with the present case and are not necessarily applicable to bond determinations not involving a condition barring employment. No attempt has been made to lay down inflexible rules governing the information to be placed in the record when a nonemployment condition is in issue. However, in a case of this type the record should facilitate prompt and fair review on both administrative and judicial levels. The record will be remanded to the immigration judge for reconsideration in light of the preceding comments.

ORDER: The record is remanded to the immigration judge for reconsideration and further proceedings consistent with the above opinion.