**NATIONAL CENTER FOR IMMIGRANTS RIGHTS, INC., et al., Plaintiffs-Appellees,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants-Appellants.**

**No. 84–5504.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1984.

Decided Sept. 28, 1984.

John M. Rogers, Dept. of Justice, Washington, D.C., for defendants-appellants.

Peter A. Schey, Margaret L. Popkin, National Center for Immigrants Rights, Inc., Los Angeles, Cal., Susan Gzesh, Maureen O'Sullivan, National Immigration Project, Boston, Mass., Patrice Perillie, Central American Refugee Center, Washington, D.C., Antonio Rodriguez, Xavier Vega, Erin Moore, Los Angeles Center for Law & Justice, Los Angeles, Cal., for plaintiffs-appellees.

Before WRIGHT, FERGUSON and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

The Immigration and Naturalization Service (INS) appeals the district court's grant of a preliminary injunction restraining the INS from applying a new regulation which became effective December 7, 1983. The previous INS regulations provided that in his discretion the District Director, with the prior approval of the INS Regional Commissioner, could include a condition barring unauthorized employment in an appearance and delivery bond in connection with deportation proceedings. 8 C.F.R. § 103.-6(a)(2)(ii) (1983). In the regulation now being challenged, the INS does away with individualized determinations. The new regulation provides in part that "[a] condition barring employment shall be included in an appearance and delivery bond in connection with a deportation proceeding.... Only those aliens who upon application ... establish compelling reasons for granting employment authorization may be authorized to accept employment." 8 C.F.R. §§ 103.6(a)(2)(ii)–(iii), 109.1(b)(8) (1984).[1]

On December 6, 1983, the plaintiffs brought suit to block implementation of the new regulation. The plaintiffs (referred to collectively as NCIR) include a number of nonprofit organizations which provide legal services to aliens with immigration problems and whose members and clients would be affected by the regulation, a United Auto Workers Union local affiliate, and 16 individuals currently in deportation proceedings. NCIR challenges the validity of the regulation under several different theories—that the regulation is without statutory authority, that it is not reasonably related to the purpose of assuring a detainee's appearance at future deportation proceedings, that it was promulgated unlawfully, that it violates fifth amendment due process and equal protection guarantees, and that it is inconsistent with and superseded by other federal laws.

On December 8, 1983, following a hearing, the district court denied a temporary

---

1. The new regulation states:

§ 103.6 Surety bonds.

(a) ....

(2) *Bond riders*—(i) *General.* Bond riders shall be prepared on Form I–351 and attached to Form I–352. If a condition to be included in a bond is not on Form I–351, a rider containing the condition shall be executed.

(ii) *Condition against unauthorized employment.* A condition barring employment shall be included in an appearance and delivery bond in connection with a deportation proceeding or bond posted for the release of an alien in exclusion proceedings, unless the District Director determines that employment is appropriate.

(iii) *Factors to be considered.* Only those aliens who upon application under § 109.1(b) of this chapter establish compelling reasons for granting employment authorization may be authorized to accept employment. Among the factors which may be considered when an application is made, are the following:

(A) Safeguarding employment opportunities for United States citizens and lawful permanent resident aliens;

(B) Prior immigration violations by the alien;

(C) Whether there is a reasonable basis for considering discretionary relief; and

(D) Whether a United States citizen or lawful permanent resident spouse or children are dependent upon the alien for support, or other equities exist.

§ 109.1 Classes of aliens eligible.

....

(b) ...

(8) Any excludable or deportable alien who has posted an appearance and delivery bond may be granted temporary employment authorization if the District Director determines that employment is appropriate under § 103.-6(a)(2)(iii) of this chapter.

....

(Sec. 103 of the Immigration and Nationality Act, as amended (8 U.S.C. 1103))

Title 8, Code of Federal Regulations.

restraining order and scheduled a hearing on NCIR's motion for a preliminary injunction. After hearing evidence and testimony on December 16, 1983, the court granted an injunction against enforcement of the regulation. Addressing only two of NCIR's theories, the court concluded that NCIR has a fair chance of showing that the regulation is invalid because it is inconsistent with the statute and because it violates due process guarantees. The district court further found that the harm to the plaintiffs from application of the regulation would be irreparable. It noted that individuals subjected to the no-work condition will be unable to support themselves and their dependents pending their deportation hearings and will have more difficulty obtaining bonds and counsel. The court found that this harm clearly outweighed the government's harm from delay in implementing the regulation.

DISCUSSION

*Jurisdiction of the District Court*

The INS raises a two-pronged threshold attack on the district court's jurisdiction. First, the INS asserts that judicial review is available only through the habeas corpus provisions of 8 U.S.C. § 1252(a). Second, the INS argues that this case is not ripe for adjudication.

The INS characterizes NCIR's challenge to the regulation as involving determinations concerning release on bond and thus as encompassed within the habeas corpus provision of section 1252(a), which states in part:

Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.

Precisely drawn statutory procedures, such as this habeas corpus procedure, are generally held to preempt more general grants of jurisdiction in cases to which they apply. *See, e.g., Brown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976). The INS states that the legislative history shows Congress' intent to make section 1252(a) an exclusive remedy:

An alien arrested and taken into custody may, pending the final determination of deportability, be continued in custody, released on bond or released on conditional parole, and the determination of the Attorney General concerning such detention, release on bond or parole shall be subject to judicial review *only* upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with reasonable dispatch to determine deportability.

H.R.Rep. No. 1365, 82d Cong., 2d Sess. 57, *reprinted in* 1952 U.S.Code Cong. & Ad. News 1653, 1711–12 (emphasis added). Since this suit was not brought as a habeas corpus action pursuant to section 1252(a), the INS argues that the district court lacked jurisdiction.

■ However, we conclude that section 1252(a) is inapplicable to this case. Section 1252(a) deals only with complaints about delays in determining deportability in individual cases. In *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir.1982), *disapproved on other grounds, Jean v. Nelson*, 727 F.2d 957, 976 n. 27 (11th Cir.1984) (en banc), the court drew a distinction between jurisdiction to rule on the merits of an individual deportation order and jurisdiction to rule on a pattern and practice of constitutional violations. The court held that although 8 U.S.C. § 1105a(a) gave courts of appeals exclusive jurisdiction to review alleged procedural irregularities in an individual deportation hearing, an allegedly unlawful pattern, program, or scheme of immigration officials was subject to examination by the district court under federal question jurisdiction. *Id.* at 1033. Here, the NCIR challenges the imposition of an automatic employment prohibition in all release bonds on statutory and constitutional grounds. In its prayer for

relief, NCIR does not seek a review on the merits of any individual determination by the INS regarding release on bond. *See id.* at 1033 n. 23. Thus, the district court properly has jurisdiction under 28 U.S.C. § 1331 to examine the merits of NCIR's challenges and to enter declaratory and injunctive relief. The district court is also given jurisdiction over claims arising under the immigration statutes. 8 U.S.C. § 1329.

The INS also asserts that this challenge to the regulation is not ripe, arguing that because one of NCIR's major contentions is that the procedures used in applying the regulation are inadequate, the court should await a more concrete case which may throw more light on the statutory and practical justifications for the regulation. *See, e.g., Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

■■■ The relevant considerations in determining whether a challenge to administrative action is ripe are (1) whether the issues are fit for judicial determination, and (2) the hardship to the parties from withholding consideration. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The district court found that both considerations warranted present judicial review. The issues are "fit" for decision because the regulation is presently being enforced and is unquestionably final, because nothing in the Act precludes present review, and because the issues presented do not require further factual development by the administrative process. *See id.* More important, the district court found that the individual plaintiffs were suffering a significant and immediate hardship from the regulation. The court correctly concluded that the issue was ripe.

*Standard of Review*

■■■ We reverse an order issuing or denying a preliminary injunction only if the district court abused its discretion or based its decision in its preliminary review of the merits on erroneous legal principles. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980).

■■■ To obtain a preliminary injunction, the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships sharply favors the moving party. *Beltran v. Myers,* 677 F.2d 1317, 1320 (9th Cir.1982). These are not separate tests, but are the ends of a continuum; the greater the relative hardship to the moving party, the less probability of success must be shown. *Benda v. Grand Lodge of the International Association of Machinists,* 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

When, as here, the plaintiffs have shown that the balance of hardships sharply favors their side, the district court need only conclude that the plaintiffs have raised "serious questions" to justify the grant of a preliminary injunction. *Beltran,* 677 F.2d at 1320. The INS does not challenge the court's finding that the balance of hardships clearly favors the plaintiffs. The hardship from being unable to work to support themselves and their dependents, to obtain release bonds, and to pay for legal representation is beyond question.

■■■ The INS requests that this court decide the merits of the case because the validity of the regulation is a question of law reviewable de novo. We decline to do so. The only conclusion of law entered by the district court is that NCIR has a fair chance of prevailing on the merits on two of its arguments. The parties have not had the benefit either of a full opportunity to present their cases or of a final judicial decision on the merits of the controversy. *See University of Texas v. Camenisch,* 451 U.S. 390, 396, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). This court thus limits its review of the merits to determining whether the district court abused its discretion by concluding that NCIR had a fair chance of success. *See, e.g., Sports Form, Inc. v. UPI,* 686 F.2d 750, 752 (9th Cir.1982). *See*

*also Otero Savings & Loan Association v. Federal Reserve Bank of Kansas City*, 665 F.2d 275, 277 (10th Cir.1981) (review on merits is limited to extraordinary cases in which trial court has ruled on a motion for preliminary injunction based on a final interpretation of the law as applied to undisputed facts).

*Is the Regulation in Accordance with the Immigration and Nationality Act?*

The district court found merit in NCIR's argument that a condition of release must be related to securing the detainee's presence at future deportation proceedings. *See, e.g., Matter of Patel*, 15 I & N Dec. 666 (BIA 1976). Section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252(a), authorizes the Attorney General to set conditions for release on bond:

> Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole....

The INS asserts that this Act gives the Attorney General "untrammeled" authority to impose any release conditions reasonably related to the purposes of the Act, and that a major purpose of the Act is to protect the American labor force by precluding aliens from engaging in unauthorized employment. The INS relies on 8 U.S.C. §§ 1101(a)(15), 1182(a)(14) for this proposition. Thus, the INS argues, prohibiting employment pending deportation hearing is consistent with the overall legislative scheme.

To support this argument, the INS relies primarily on *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

*Carlson* involved a challenge to the Attorney General's decision to hold five active alien Communists without bail pending determination of their deportability. *Carlson* does not conclusively control this case for two reasons. First, in *Carlson*, the Attorney General justified the exercise of his discretion to deny bail "by reference to the legislative scheme to eradicate the evils of Communist activity." *Carlson*, 342 U.S. at 543, 72 S.Ct. at 536. The Supreme Court stated that "[a]s the purpose of the Internal Security Act to deport all alien Communists as a menace to the security of the United States is established by the Internal Security Act itself, Title I, § 2, we conclude that the discretion as to bail in the Attorney General was certainly broad enough to justify his detention of all these parties without bail as a menace to the public interest." *Carlson*, 342 U.S. at 541, 72 S.Ct. at 534. In contrast to Congress' clear directives under the Internal Security Act in the area of national security, "[t]he INA evinces 'at best evidence of peripheral concern with employment of illegal entrants.'" *Sure-Tan, Inc. v. NLRB*, — U.S. ——, 104 S.Ct. 2803, 2809, 81 L.Ed.2d 732 (1984) (quoting *De Canas v. Bica*, 424 U.S. 351, 360, 96 S.Ct. 933, 939, 47 L.Ed.2d 43 (1976)). Congress has not made it a criminal offense for an alien to accept employment after entering this country without proper authorization. *Sure-Tan*, 104 S.Ct. at 2809.

Second, in *Carlson*, there was evidence as to each of the aliens of "membership plus personal activity in supporting and extending the Party's philosophy concerning violence" which justified the exercise of the Attorney General's discretion to deny bail. *Carlson*, 342 U.S. at 541, 72 S.Ct. at 535. The Court noted that not all persons arrested as deportable under the Internal Security Act are denied bail. *Id.* at 541–42, 72 S.Ct. at 534–35. The discretion of the Attorney General to impose a condition on a particularized showing in an individual case is quite different from the authority to do so by a blanket rule. As Justice Frankfurter observed:

If the Attorney General, after the Internal Security Act, had made a general ruling that thereafter he would not allow bail to any alien against whom deportation proceedings were started and who was then a member of the Communist Party—an undiscriminating, unindividualized class determination—it would disregard the clear directive of Congress for this Court not to hold that the Attorney General had exceeded the limits of his discretion.

*Id.* at 558, 72 S.Ct. at 543 (Frankfurter, J., dissenting). *Cf. Rubinstein v. Brownell*, 206 F.2d 449, 455–56 (D.C.Cir.1953) (detention of alien seeking judicial review of deportation order was improper when Attorney General made no showing that the alien would abscond or engage in subversive or criminal activity), *aff'd per curiam by an equally divided court*, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421 (1954). *See also O'Rourke v. Warden*, 539 F.Supp. 1131, 1137 (S.D.N.Y.1982) (court should review whether agency's decision to deny bail is supported by or has reasonable foundation in the record). In conformity with these authorities, under the prior regulation the INS required specific, individualized information to justify an employment prohibition condition in each case. *Matter of Vea*, Interim Decision # 2890 at 5 (BIA 1981); *Matter of Leon-Perez*, 15 I & N Dec. 239 (BIA 1975); 8 C.F.R. § 103.6(a)(2) (1983).

In addition to arguing that the Attorney General's discretion does not extend to imposing a blanket condition such as this one, NCIR argues that the nonemployment condition is not rationally related to the statutory purpose of protecting domestic labor. At the preliminary injunction hearing, NCIR introduced expert testimony and evidence tending to show that employment by aliens awaiting deportation proceedings does not affect American unemployment.

The district court has not yet made any findings or conclusions based on that evidence.

█ We decline to discuss the other arguments advanced by the INS because we agree with the district court that NCIR has a fair chance of prevailing on the merits of its argument that the regulation is invalid because it is not related to the purposes of the Act and does not require individualized determinations.[2] Under the law of this circuit, NCIR was thus entitled to a preliminary injunction. *Los Angeles Memorial Coliseum Commission*, 634 F.2d at 1200.

### Necessity for Class Certification

NCIR framed its complaint as a class action suit, but did not move for class certification prior to the preliminary injunction. The district court enjoined the INS from applying the regulation without making any findings as to class membership.

█ The INS asserts that in the absence of class certification, the preliminary injunction may properly cover only the named plaintiffs. We agree. *See, e.g., Hollon v. Mathis Independent School District*, 491 F.2d 92 (5th Cir.1974) (when suit was brought by individual challenging school regulations, a preliminary injunction enjoining enforcement of the regulation against anyone else went further than necessary to serve the purpose of maintaining the parties' status quo pending trial on the merits); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper"); *Tape Head Co. v. RCA*, 452 F.2d 816, 819 (10th Cir.1971).

We therefore remand for possible modification of the injunction because on the basis of the present record its scope is too broad. On remand, if the district court

---

**2.** The NCIR also contends that detained aliens have a protected liberty interest under the fifth amendment in working until their deportability is determined in a due process hearing. In addition, plaintiffs argue that the regulation violates their due process rights under the fifth amendment because it lacks procedures by which an alien may obtain employment authorization. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although we need not decide these questions here, we agree with the district court that plaintiffs' arguments have some merit.

**1372**

fails to certify a class of plaintiffs, it must limit the injunction to apply to the named plaintiffs only.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.