NATIONAL CENTER FOR IMMI-
GRANTS' RIGHTS, INC., et al.,
Plaintiffs-Appellees,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, et al.,
Defendants-Appellants.

No. 85–6131.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1986.

Decided June 13, 1986.

**1352**

Peter A. Schey, Margaret L. Popkin, National Center for Immigration, Los Angeles, Cal., for plaintiffs-appellees.

Freddie Lipstein, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Before: HUG and NORRIS, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Judge:

The Immigration and Naturalization Service (INS) appeals the district court's grant of summary judgment in favor of National Center for Immigrants' Rights, Inc. (NCIR), appellees. The district court held that the inclusion of a condition barring unauthorized employment in every appearance and delivery bond issued in connection with a deportation proceeding exceeded the Attorney General's statutory authority under the Immigration and Nationality Act (I & N Act or Act). We affirm.

### Facts

The I & N Act[1] is a comprehensive scheme intended to govern all aspects of the admission of aliens to the United States. The Act provides for the arrest and deportation of aliens present in the United States in violation of the law. 8 U.S.C. § 1357(a)(2) (1982). An alien taken into custody pending a final determination of deportability may, in the discretion of the Attorney General, "(1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole." 8 U.S.C. § 1252(a).

Under this statutory authority, the INS promulgated the following regulations:

(ii) *Condition against unauthorized employment.* A condition barring employment shall be included in an appearance and delivery bond in connection with a deportation proceeding or bond posted for the release of an alien in exclusion proceedings, unless the District Director determines that employment is appropriate.

(iii) *Factors to be considered.* Only those aliens who upon application under § 109.1(b) of this chapter establish compelling reasons for granting employment authorization may be authorized to accept employment. Among the factors which may be considered when an application is made, are the following:

(A) Safeguarding employment opportunities for United States citizens and lawful permanent resident aliens;

(B) Prior immigration violations by the alien;

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 8 U.S.C. §§ 1101–1503.

(C) Whether there is a reasonable basis for considering discretionary relief; and

(D) Whether a United States citizen or lawful permanent resident spouse or children are dependent upon the alien for support, or other equities exist.[2]

\* \* \* \* \* \*

Any excludable or deportable alien who has posted an appearance and delivery bond may be granted temporary employment authorization if the District Director determines that employment is appropriate under § 103.-6(a)(2)(iii) of this chapter.[3]

Appellees[4] filed this action to challenge the implementation of the regulation on both statutory and constitutional grounds. The district court granted a preliminary injunction enjoining the enforcement of the regulations. This court affirmed. *National Center for Immigrants Rights, Inc. v. Immigration and Naturalization Service,* 743 F.2d 1365 (9th Cir.1984).

On remand, the district court granted appellees' request for class certification. The class consists of "all those persons who have been or may in the future be denied the right to work pursuant to 8 C.F.R. § 103.6." The district court held that the regulations are invalid because they were promulgated beyond statutory authority and because they impose a blanket condition on all arrested aliens. The district court granted summary judgment in favor of appellees.

In this appeal, the INS contends that the language of the Act gives the Attorney General complete discretion to impose any release condition which furthers the provisions of the Act. In addition, the INS contends that the district court lacked jurisdiction over individuals in the class because: 1) appellees did not file a habeas

corpus proceeding as required by the Act; and 2) certain individuals failed to exhaust their administrative remedies.

### Standard of Review

Appellate courts review *de novo* a trial court's grant of summary judgment. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is appropriate when there are no genuine issues of material fact and when the evidence, viewed in a light most favorable to the opposing party, entitles the movant to prevail as a matter of law. *Id.* The court shall consider all admissible affidavits and supplemental documents on a motion for summary judgment. Fed.R.Civ.P. 56. Proper jurisdiction is a question of law and is also subject to *de novo* review. *See Clayton v. Republic Airlines, Inc.,* 716 F.2d 729, 730 (9th Cir.1983).

### Discussion
#### Jurisdiction of the District Court

In a class action, the court must have jurisdiction over the claims of the individual members of the class. *See Califano v. Yamasaki,* 442 U.S. 682, 701–702, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176 (1979). The class certified must be limited to individuals who meet the requirements of the relevant jurisdictional statutes. *Id.*

Appellees assert that because the INS failed to raise its jurisdictional arguments at the trial level, the INS is precluded from raising them now. This assertion is without merit. A party may raise jurisdictional challenges at any time during the proceedings. *May Dept. Store v. Graphic Process Co.,* 637 F.2d 1211, 1216 (9th Cir. 1980).

The INS contends that the district court lacked jurisdiction because NCIR failed to file the habeas corpus action required un-

---

**2.** 8 C.F.R. § 103.6(a)(2)(ii) and (iii) (1985).

**3.** 8 C.F.R. § 109.1(b)(8) (1985).

**4.** Appellees include thirteen nonprofit organizations providing free legal aid services to aliens with immigration problems, a local United Auto Workers affiliate, eleven named aliens held in

detention, four named aliens released on bonds with conditions against unauthorized employment, and one unnamed alien who claims to be deterred from filing for benefits with the INS because of fears that the new regulations would result in that aliens's indefinite detention.

der 8 U.S.C. § 1252.[5] We reject this contention because we have already determined that section 1252(a) is inapplicable to this case because the section deals only with complaints about delays in determining the deportability of individual aliens. *National Center, supra,* 743 F.2d at 1368.

■The INS also contends that NCIR failed to exhaust the administrative remedies that the Act secures to detained aliens. The only exhaustion requirement of the Act[6] applies to "orders of deportation or of exclusion" and not to conditions imposed on bonds prior to such order. We hold that the district court had jurisdiction over the members of the certified class.

*Review of Summary Judgment*

■Absent a clearly expressed legislative intent to the contrary, the language of a statute must ordinarily be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The INS asserts that the language of 8 U.S.C. § 1103 and § 1252(a) clearly grants authority to the Attorney General to impose any condition in a bond that he deems necessary to carry out the provisions of the Act. The Act contains a provision which conditions the entry of certain aliens into the United States on employment considerations. 8 U.S.C. § 1182(a)(14). These limitations reflect Congress's desire to protect the American workforce from displacement due to immigration. The INS argues that the no-work condition is directly related to this purpose of the Act and is within the Attorney General's statutory authority.

■The Attorney General may release an arrested alien pending a determination of deportability under a security bond "containing such conditions as the Attorney General may prescribe." 8 U.S.C. § 1252(a). The express language of the statute appears to grant wide discretion to the Attorney General. Nevertheless, legislative history, prior legislation, and case law limit the allowable conditions to those that tend to insure the appearance of the alien in future proceedings.

Section 1252(a) deals solely with the arrest, custody and control of an alien pending determination of deportability. The specific examples of allowable conditions set out by Congress in the legislative history[7] relate solely to the ability of the Attorney General and the INS to maintain contact with and control over aliens. These indicate a Congressional intent to limit the Attorney General's authority under section 1252(a) to the imposition of only those conditions which tend to insure an alien's appearance at future proceedings.

Relying on *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the INS asserts that the Attorney General's authority to impose bond conditions is not

**5.** 8 U.S.C. § 1252(a) provides in part that:
Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.

**6.** 8 U.S.C. § 1105a(c) (1982) provides in part that:

An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.

**7.** H.R.Rep. No. 1365, 82d Cong., 2d Sess. 6 (1952); H.R.Rep. No. 2980, 81st Cong., 2d Sess. (1950); H.R.Rep. No. 1192, 81st Cong., 1st Sess. 6 (1949); S.Rep. No. 2239, 81st Cong., 2d Sess. 5 (1950).

limited to these conditions. In our opinion, such reliance is misplaced. *Carlson* involved a challenge to the Attorney General's authority to hold five active Communists without bail pending the determination of their deportability. The Attorney General based his denial of bail primarily on the heightened Congressional interest in protecting the United States and its citizens from Communist activity, evidenced by the Internal Security Act of 1950,[8] and the Subversive Activities Control Act of 1950.[9] *Id.* at 529, 72 S.Ct. at 528.

The Supreme Court examined the applicable deportation standards and found that the Attorney General did not have "untrammeled discretion" in determining bail. "[H]e must justify his refusal of bail by reference to the legislative scheme to eradicate the evils of Communist activity." *Id.* at 543, 72 S.Ct. at 535.

The Court examined the specific legislative scheme of the Internal Security Act of 1950 and found that the statute granted the Attorney General authority broad enough to justify the detention of the Communist aliens. *Id.* at 541, 72 S.Ct. at 534. Although the court noted that the general consideration for denial of bail was to insure availability for trial, it found that the Communist threat to the national security was exceptional. The Court held that the Attorney General was within the scope of his authority when he denied bail to the Communist aliens.

■ The scope of discretionary authority granted to the Attorney General under the Internal Security Act is much greater than the authority granted him under the Act. This court previously noted in *National Center, supra*, 743 F.2d at 1370:

> In contrast to Congress' clear directives under the Internal Security Act in the area of national security, "[t]he INA evinces 'at best evidence of peripheral

concern with employment of illegal entrants.'" *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 2809, 81 L.Ed.2d 732 (1984) (quoting *DeCanas v. Bica*, 424 U.S. 351, 360, 96 S.Ct. 933, 939, 47 L.Ed.2d 43 (1976)).

In *DeCanas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), the Supreme Court held that a California statute that prohibited the knowing employment of illegal aliens if such employment would adversely affect lawfully resident workers was not preempted by the Act. *Id.* at 365, 92 S.Ct. at 941. Likewise, in *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the Supreme Court held that the application of the National Labor Relations Act to undocumented aliens was not prevented by the Act because the Act was only peripherally concerned with the employment of aliens.

In *Carlson, supra*, there was evidence that each individual, at the time of his arrest, was a member of the Communist Party and had participated in the Party's indoctrination of others. *Carlson, supra*, 342 U.S. at 530, 72 S.Ct. at 529. This evidence of individual personal activity justified the Attorney General's discretion to deny bail. The *Carlson* court noted that not all deportable Communist aliens were automatically denied bail. This holding is in contrast with the regulations in this case which subject all arrested aliens to the no-work condition until the alien can prove "compelling reasons" for granting employment authorization.

The Attorney General, in his interpretation of his authority under the Act, has recognized the need for individualized determinations rather than the imposition of a blanket condition. *Matter of Toscano-Rivas, et al.*, 14 I & N Dec. 523 (1974). Earlier regulations and INS case law have required individualized determinations be-

---

**8.** 8 U.S.C. §§ 137 and 155.

**9.** 50 U.S.C. §§ 781–826.

fore the inclusion of a no-work condition in the bond. *See Matter of Chew,* I & N Dec. # 2910 (July 1, 1982); and *Matter of Vea,* I & N Dec. # 2890 (November 4, 1981).

 The statutes, legislative history, and pertinent case law indicate that the Attorney General's authority under 8 U.S.C. § 1252(a) of the Act is limited to the imposition of bond conditions which tend to insure the alien's appearance at future deportation proceedings. The peripheral concern of the Act with the employment of illegal aliens is not sufficient to support the imposition of a no-employment condition in every bond.

AFFIRMED.