198 F.3d 725 (9th Cir. 1999)
 MICHAEL WALCZAK, DR.; SHIRLEY J. BAKER; RODNEY BARNES; BRIAN BROOKS; JANE BROOKS; WILMA BROOKS; LOUIS REEDY; FLORENCE BROWN; GEORGE T. FEIEREISEN; TERRY MASON; JANIS MASON; HARRY M. OLSON, JR.; IVAN SCHULTZ; DOROTHY SCHULTZ, on Behalf of Themselves and all Other Shareholders of EPL Prolong, Inc., Plaintiffs-Appellees,
v.
EPL PROLONG, INC., dba Prolong International, dba Prolong Super Lubricants; PROLONG INTERNATIONAL CORPORATION, fka Giguere Industries, Inc.; PROLONG SUPER LUBRICANTS, INC., fka Corporate Development, Inc.; ELTON ALDERMAN; TOM KUBOTA; TIM BILLSTEIN; MICHAEL DAVIS; MELANIE A. MCCAFFERY; NICHOLAS M. ROSER; GARY C. WYKIDAL, Personally and in their Capacities as Officers, Attorneys, and Shareholders of EPL Prolong, Inc., dba Prolong International, Prolong Super Lubricants, Inc., and Prolong International Corp., and all other Prolong Affiliated Companies, Defendants-Appellants, and THE ESTATE OF EDWIN C. AULD, JR., RAYMOND PRATT; LOIS M. MILLER, Defendants.
 No. 99-55227
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted November 2, 1999
Filed December 3, 1999
 
 COUNSEL: Neil Goteiner (Argued), San Francisco, California, and Jeffrey L. Garland, Law Offices of Jeffrey L. Garland (On the Briefs), for the defendants-appellants.
 Timothy A. Shimko (Argued), Timothy A. Shimko & Associates, Cleveland, Ohio, and Bruce Corbett, Corbett & Steelman, Irvine, California, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of California
 Before: Myron H. Bright,[1] Stephen Reinhardt, and Stephen S. Trott, Circuit Judges.
 OPINION
 TROTT, Circuit Judge:
 
 
 1
 EPL Prolong, Inc., et al. (collectively "Appellants") appeal an order of the district court granting a preliminary injunction in favor of appellee Michael Walczak ("Walczak"), an EPL Prolong, Inc. minority shareholder who is the representative in a class action shareholder derivative suit. Appellants argue that the Supreme Court's recent decision in Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 119 S. Ct. 1961 (1999), warrants summary reversal of the district court's preliminary injunction. Alternatively, Appellants contend that the district court erred in granting the preliminary injunction because Walczak failed to demonstrate: (1) a threat of irreparable injury; or (2) a likelihood of success on the merits. We have jurisdiction pursuant to 28 U.S.C. S 1292(a)(1), and we affirm the district court's order issuing a preliminary injunction.
 
 
 2
 * Background
 
 
 3
 EPL Prolong, Inc. ("EPL Prolong"), a California corporation, owns the patent for "Prolong Super Lubricant" ("PSL Patent"), which is a high performance metal lubricant used in automobiles as an additive to motor oil. In 1993, EPL Prolong entered into a license agreement ("1993 License Agreement") with Prolong Super Lubricants, Inc., f/k/a Corporate Development, Inc. ("PSLI"), a shell corporation with no current operations. Pursuant to the 1993 License Agreement, EPL Prolong granted PSLI the exclusive right to use the PSL Patent. In exchange, PSLI paid EPL Prolong an initial fee of $100,000 and guaranteed EPL Prolong a cash royalty of 3.5% of the gross sales generated by use of the PSL Patent or the tradename "Prolong." At the time, EPL Prolong's minority shareholders were not notified of the 1993 License Agreement.
 
 
 4
 When EPL Prolong entered into the 1993 License Agreement with PSLI, Elton Alderman, Edwin C. Auld, Jr., and Michael R. Davis were all directors, officers, and significant shareholders of EPL Prolong. Shortly thereafter, however, Alderman and Auld surrendered their shares in EPL Prolong, acquired an equal ownership interest in PSLI, and became directors and officers of PSLI. Although Davis remained a director and officer of EPL Prolong, he also became an officer, director, and significant shareholder of PSLI.
 
 
 5
 In 1995, the directors of PSLI aspired to take the corporation public without engaging in an initial public offering. To accomplish this goal, PSLI negotiated an agreement with Giguere Industries ("Giguere"), a shell corporation whose stock could be traded publicly. Pursuant to this agreement, Giguere, which was renamed Prolong International Company ("Prolong International"), acquired all of the shares of PSLI and, in exchange, granted the PSLI shareholders stock in Prolong International. As a result of this transaction, PSLI became a wholly-owned subsidiary of Prolong International.
 
 
 6
 In February 1998, EPL Prolong and Prolong International entered into an agreement ("1998 Agreement"). The terms of the 1998 Agreement were as follows:
 
 
 7
 (1) Prolong International would purchase substan tially all of the assets and certain of the liabili ties of EPL Prolong;(2) Prolong International would issue and deliver to EPL Prolong approximately three million shares of Prolong International common stock;
 
 
 8
 (3) EPL Prolong would be liquidated and dis solved;
 
 
 9
 (4) Upon dissolution, EPL Prolong would distrib ute all of its assets, including the shares of Pro long International common stock, to its shareholders; and
 
 
 10
 (5) Each shareholder of EPL Prolong would be entitled to receive approximately (1) share of Prolong International common stock for every (2) shares of EPL Prolong common stock.
 
 
 11
 In order to proceed with this transaction, EPL Prolong needed the approval of a majority of the shareholders of its common stock.
 
 
 12
 In August 1998, a series of events gave rise to the current lawsuit between EPL Prolong's minority shareholders and Appellants. First, EPL Prolong advised its minority shareholders, which included Walczak and the other members of the class in the current suit, of its plans to consummate the 1998 Agreement. Second, EPL Prolong informed the minority shareholders that EPL Prolong's Board of Directors, as well as a majority of the shareholders, had approved the 1998 Agreement and, therefore, EPL Prolong was prepared to proceed with the transaction. Finally, Walczak and the other minority shareholders learned about some of EPL Prolong's prior dealings, such as the 1993 License Agreement with PSLI.
 
 
 13
 In response to this information, Walczak filed a class action shareholder derivative suit against EPL Prolong, PSLI, Prolong International, board members of EPL Prolong, and various other individuals in federal district court on November 17, 1998. Among other things, Walczak's complaint alleged RICO violations, fraudulent conveyance, and breach of fiduciary duty.
 
 
 14
 On November 20, 1998, Walczak filed a motion for a temporary restraining order ("TRO") and a preliminary injunction, seeking to prevent the consummation of the 1998 Agreement. Walczak alleged that as creditors of EPL Prolong, the plaintiffs would suffer irreparable harm if the proposed transaction was completed. Specifically, Walczak argued that completion of the transaction contemplated by the 1998 Agreement would result in EPL Prolong's dissolution, thereby making it impossible for the plaintiffs to collect debts or judgments from EPL Prolong. On November 25, 1998, the district court granted the motion for the TRO and issued an "Order to Show Cause as against all defendants as to why a preliminary injunction should not be granted."
 
 
 15
 After considering the parties' arguments, the evidence, and the relevant law, the district court granted Walczak's motion for a preliminary injunction. The court concluded that, with regard to the fraudulent conveyance and breach of fiduciary duty claims, Walczak had demonstrated a threat of irreparable harm and a likelihood of success on the merits. The court therefore granted Walczak's motion for a preliminary injunction and ordered the plaintiffs to post a security bond in the amount of $100,000. Appellants appeal.
 
 II
 Appellants' Motion for Summary Reversal
 
 16
 Pursuant to Ninth Circuit Rule 3-6,[2] Appellants have filed a motion for summary reversal based on the Supreme Court's recent decision in Grupo Mexicano. Appellants argue that Grupo Mexicanocompels this court to summarily reverse the district court order because Grupo Mexicano held that a district court does not have the power to grant the type of preliminary injunction that the court issued in this case. Walczak, on the other hand, argues that Grupo Mexicano is distinguishable from the case at bar and, therefore, contends that we should deny Appellants' motion. We agree with Walczak.
 
 
 17
 In Grupo Mexicano, plaintiff Alliance Bond Fund, Inc. ("Alliance"), who had purchased unsecured notes from defendant Grupo Mexicano de Desarrollo, S.A. ("GMD"), sued GMD for breach of contract, alleging that GMD had defaulted on its obligation under the notes. Grupo Mexicano, 119 S. Ct. at 1964-65. In addition to damages, Alliance sought a preliminary injunction to restrain GMD from dissipating its assets, specifically GMD's guaranteed notes ("Toll Road Notes"), which the Mexican government had issued to GMD pursuant to the "Toll Road Rescue Program." Id. The district court granted the preliminary injunction in favor of Alliance, the Second Circuit affirmed, and the Supreme Court granted certiorari. Id. at 1965.
 
 
 18
 In a five-to-four decision, the Supreme Court reversed the Second Circuit and held that "the district court had no authority to issue a preliminary injunction preventing[the defendants] from disposing of their assets pending adjudication of [the plaintiff's] contract claim for money damages." Id. at 1975. In reaching this conclusion, the Court relied on the "well-established rule" that an unsecured creditor seeking legal remedies cannot obtain a preliminary injunction that freezes a debtor's assets in order to ensure the availability of funds to satisfy a future judgment. Id. at 1968. The majority concluded, therefore, that because such a remedy was historically unavailable from a court of equity, the district court exceeded its authority in granting the preliminary injunction. Id.
 
 
 19
 In this case, Appellants argue that the holding of Grupo Mexicano applies to the injunction granted in favor of Walczak because, similar to the injunction in Grupo Mexicano, the district court granted the preliminary injunction "to protect a legal damages remedy." In granting the preliminary injunction, the district court stated:
 
 
 20
 [P]laintiffs have demonstrated that the defendant's assets would be dissipated and no relief would be otherwise available if the injunction were not issued and EPL was dissolved as a corporate entity . . . . By granting a preliminary injunction, the plaintiffs will be protected from the possible further dilution that has consistently effected [sic] EPL's pool of assets in the past . . . . Even where the ultimate relief sought is money damages, federal courts have found equitable injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring assets.
 
 
 21
 It is true that the district court's motivation for granting the preliminary injunction was its concern that dissolution of EPL Prolong would preclude Walczak from collecting on a future judgment.
 
 
 22
 As Walczak contends in his opposition to Appellants' motion for summary reversal, the injunction in this case is distinguishable from the injunction at issue in Grupo Mexicano. In Grupo Mexicano, the district court granted a preliminary injunction that restrained GMD from "dissipating, transferring, conveying, encumbering or otherwise distributing or affecting the [plaintiff's] right to, interest in, title to or right to receive or retain, any of the [Toll Road Notes]." Id., 119 S. Ct. at 1965. The majority opinion makes clear that the Court interpreted this language to mean that the district court ordered a "freeze" on GMD's assets. Id. at 1970 (stating that "[W]e would not be inclined to believe that it is merely a question of procedure whether a person's unencumbered assets can be frozen by general-creditor claimants beforetheir claims have been vindicated by judgment."); id. at 1974 n.11 (stating that Alliance sought to freeze GMD's assets to satisfy its anticipated judgment). Accordingly, Grupo Mexicano held that, in the case of an unsecured creditor, a district court is without authority to issue a preliminary injunction that effects a "freeze" on the debtor's assets.
 
 
 23
 Here, the district court's injunction did not order a "freeze" on any of Appellants' assets. The district court's order provided:
 
 
 24
 Plaintiffs' request for a preliminary injunction is hereby granted. It is ordered that all defendants, their agents, assigns, officers and representatives are hereby enjoined from consummating the exchange of the planned "two for one" stock swap of EPL Pro long Inc. for Prolong International Corp. stock, and from liquidating EPL Prolong Inc. or its patent rights in any fashion until further notice from this court or until a final judgment on the merits is reached in this litigation as to all parties.
 
 
 25
 Thus, unlike the injunction at issue in Grupo Mexicano, this injunction does not completely prohibit Appellants from taking any action with regard to their assets. Instead, the injunction merely restrains Appellants from either completing the 1998 Agreement or liquidating EPL Prolong. Moreover, as Walczak argues, except for EPL Prolong, the injunction does not affect the other Appellants' assets in any way.
 
 
 26
 We hold that the injunction in this case is distinguishable from the injunction in Grupo Mexicano. Here, the effect of the preliminary injunction was not to "freeze " Appellants' assets. Rather, the injunction appropriately preserved the status quo and prevented the irreparable loss of rights before judgment. See Barahona-Gomez v. Reno, 167 F.3d 1228, 1234 (9th Cir. 1999). Accordingly, we deny Appellants' motion for summary reversal.
 
 III
 
 27
 The District Court's Issuance of a Preliminary Injunction
 
 A. Standard of Review
 
 28
 We subject a district court's order regarding preliminary injunctive relief only to "limited review." FTC v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999). Review of an order granting or denying a preliminary injunction is much more limited than review of an order involving a permanent injunction, where all conclusions of law are freely reviewable. Sports Form, Inc. v. United Press Int'l, Inc., 686 F.2d 750, 752 (9th Cir. 1982).
 
 
 29
 We review a district court's decision regarding a preliminary injunction for an abuse of discretion. Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir. 1999). In issuing a preliminary injunction, a district court abuses its discretion by basing its decision on either an erroneous legal standard or clearly erroneous factual findings. Affordable Media, 179 F.3d at 1233. A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation. Sports Form, 686 F.2d at 752. On the other hand, a district court's decision is based on clearly erroneous factual findings if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Thus, we will reverse the district court's issuance of a preliminary injunction in favor of Walczak only if the district court based its decision on an erroneous legal standard or clearly erroneous findings of fact. See Affordable Media, 179 F.3d at 1233.
 
 B. Merits
 
 30
 The standard for a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties. Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1118 (9th Cir. 1999). To obtain a preliminary injunction, Walczak was required to demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. See id. These two alternatives represent "extremes of a single continuum, " rather than two separate tests. Id. (quoting Sega Enters. v. Accolade, Inc., 977 F.2d 1510, 1517 (9th Cir. 1992)). Thus, the greater the relative hardship to Walczak, the less probability of success must be shown. See National Ctr. for Immigrants Rights v. INS, 743 F.2d 1365, 1369 (9th Cir. 1984).
 
 
 31
 In granting Walczak's motion for a preliminary injunction, the district court concluded that, with respect to the claims for fraudulent conveyance and breach of fiduciary duty, the plaintiff demonstrated: (1) a strong likelihood of success on the merits; and (2) the possibility of irreparable harm. On appeal, Appellants argue that the district court abused its discretion in reaching this conclusion.
 
 1. Fraudulent Conveyance Claim
 
 32
 Walczak's claim for fraudulent conveyance, which is governed by the Uniform Fraudulent Transfer Act ("UFTA"),[3] is based on the 1993 License Agreement between EPL Prolong and PSLI. Walczak alleges that, pursuant to the 1993 License Agreement, EPL Prolong's assets were transferred for less than market value in order to benefit the directors and officers of EPL Prolong and PSLI.
 
 
 33
 The district court determined that Walczak demonstrated a strong likelihood of success on the merits with respect to the UFTA claim. According to the court, the evidence suggested that at the time EPL Prolong and PSLI entered into the 1993 License Agreement, they intended to defraud the minority shareholders. To support this conclusion, the court emphasized the fact that the minority shareholders were not notified or consulted about the 1993 License Agreement.
 
 
 34
 On appeal, however, Appellants argue that the district court erred in granting the preliminary injunction based on Walczak's UFTA claim. According to Appellants, Walczak cannot state an UFTA claim because he is merely a shareholder and, therefore, is not a "creditor" under UFTA. For purposes of UFTA, the California Civil Code defines a "creditor" as "a person who has a claim." Cal. Civ. Code S 3439.01(c) (West 1997). Furthermore, "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. S 3439.01(b). Thus, under UFTA a "creditor" is "a person who has a right to payment." As such, Appellants argue that Walczak is not a "creditor" under UFTA because shareholders do not have a right to payment, but insteadmerely hold an ownership interest in the corporation.
 
 
 35
 It is unclear from the language of the statute whether a shareholder, such as Walczak, is a "creditor" under UFTA. Moreover, we did not find any California cases interpreting UFTA's definition of "creditor," or discussing whether shareholders qualify as "creditors" under UFTA. However, we need not decide this issue because, as discussed below, we hold that the district court properly issued the preliminary injunction based on Walczak's breach of fiduciary duty claim.
 
 2. Breach of Fiduciary Duty Claim
 
 36
 Walczak alleges that Appellants breached their fiduciary duty by entering into the 1993 License Agreement that transferred the PSL patent to PSLI. Walczak's breach of fiduciary duty claim is governed by section 310 of the California Corporations Code ("Section 310"), which provides that a contract or transaction between a corporation and one or more of its directors ("Interested Director Transaction") is not necessarily invalid. Cal. Corp. Code S 310 (West 1990). Section 310 states that even if the director's personal interest was not disclosed and the transaction was not approved or ratified by a majority of the disinterested board members or shareholders, the transaction can still be valid. Id. Specifically, a court can uphold the Interested Director Transaction if "the party asserting the validity of the . . . transaction sustains the burden of proving that the contract or transaction was just and reasonable as to the corporation at the time it was authorized, approved or ratified." Id. S 310(a)(3).[4]
 
 
 37
 After reviewing the evidence, the district court held that, with respect to the breach of fiduciary duty claim, Walczak demonstrated a strong likelihood of success on the merits and the possibility of irreparable injury. According to the court, Walczak demonstrated that he likely would succeed in proving that the 1993 License Agreement was an improper Interested Director Transaction by presenting evidence that the agreement lacked inherent fairness. Moreover, the court concluded that Walczak demonstrated the possibility of irreparable injury by proving that Appellants had engaged in a pattern of improperly dispersing of and transferring assets, which likely would frustrate Walczak's attempt to collect a judgment. Accordingly, the court issued the preliminary injunction in favor of Walczak.
 
 
 38
 On appeal, Appellants do not challenge the legal standard that the district court applied in granting the preliminary injunction. Rather, they argue that we should reverse because the factual findings on which the district court rested its decision to grant the preliminary injunction are clearly erroneous. First, Appellants contend that the district court misunderstood the terms of the 1993 License Agreement and, therefore, erred in finding that the 1993 License Agreement was inherently unfair. Appellants explain that, contrary to the district court's understanding, the 1993 License Agreement entitled EPL Prolong to 3.5% of the gross revenues generated by PSLI's use of the PSL Patent, not 3.5% of the royalties. Furthermore, Appellants submit that the 1993 License Agreement was fair because PSLI assumed all marketing and production costs, which allowed EPL Prolong to cease operations and collect the royalty without incurring any operating costs. Second, Appellants argue that the court's finding that Appellants engaged in a pattern of improperly dispersing of and transferring assets is clearly erroneous because there was no evidence to support such a finding.
 
 
 39
 As discussed above, a district court's decision regarding a preliminary injunction is reviewed for an abuse of discretion. Bay Area Addiction, 179 F.3d at 730. Thus, such a decision will not be reversed simply because we would have arrived at a different result if we had applied the law to the facts of the case. Sports Form, 686 F.2d at 752. In this case, the district court applied the appropriate legal standard and, therefore, we will reverse only if the court based its conclusions on clearly erroneous factual findings. See Affordable Media , 179 F.3d at 1233; Sports Form, 686 F.2d at 752.
 
 
 40
 After reviewing the record, we hold that the district court did not abuse its discretion in issuing the preliminary injunction because the factual findings upon which the court based its decision are not clearly erroneous. The district court considered extensive evidence before making these factual findings. In fact, the court stated in its order that it considered over 420 pages of deposition testimony, over 100 supporting and related exhibits, multiple rounds of pleadings, oppositions, and replies, and extensive oral argument. Based on this evidence, the court found that the 1993 License Agreement was inherently unfair and that Appellants engaged in a pattern of improperly dispersing of and transferring assets.
 
 
 41
 First, in finding that the 1993 License Agreement was inherently unfair, the court relied on evidence that Appellants entered into the 1993 License Agreement without notifying the minority shareholders, seeking their approval, or requesting ratification. In addition, the court found that the terms of the 1993 License Agreement were unfair because PSLI paid only $100,000 in exchange for the right to use the PSL Patent and the tradename "Prolong." In particular, the court relied on the deposition testimony of defendants Alderman and Davis to find that, pursuant to the 1993 License Agreement, PSLI controlled 96.5% of the total sales generated by use of the PSL Patent, which likely exceeded over $30 million in 1997, while EPL Prolong retained a mere 3.5% of the total sales. Contrary to Appellants' claims, therefore, it seems that the district court did not clearly err in its finding regarding the terms of the 1993 License Agreement.
 
 
 42
 Second, in finding that Appellants engaged in a pattern of improperly dispersing of and transferring corporate assets, the court considered deposition testimony and documents evidencing Appellants' involvement in several transactions between 1993 and 1998, which resulted in corporate asset transfers and allegedly fraudulent stock swaps.
 
 
 43
 Based on the record, we hold that the district court's findings that the 1993 License Agreement was inherently unfair and that Appellants improperly dispersed of and transferred corporate assets are not clearly erroneous. The district court appropriately concluded that, with respect to the breach of fiduciary duty claim, Walczak demonstrated a likelihood of success on the merits and the possibility of irreparable harm. Accordingly, we affirm the district court's decision to issue a preliminary injunction in favor of Walczak.
 
 3. Security Bond
 
 44
 Finally, Appellants argue that the district court erred by requiring Walczak to post a bond of only $100,000. Appellants contend that, if they are enjoined from completing the 1998 Agreement as planned, they will lose substantial revenue and will risk a tax liability of approximately $2 million. Appellants argue, therefore, that $100,000 will not adequately compensate them for being wrongfully enjoined.
 
 
 45
 Federal Rule of Civil Procedure 65(c) grants district courts wide discretion in setting the amount of a security bond. Fed. R. Civ. P. 65(c); Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (9th Cir. 1997). Thus, we review the district court's decision as to the amount of a security bond for an abuse of discretion. See Barahona-Gomez, 167 F.3d at 1237.
 
 
 46
 Before setting the amount of the security bond, the district court in this case considered both parties' evidence regarding the potential financial ramifications of issuing a preliminary injunction. Specifically, the court considered the declarations of John Burke, an economist, and Gary Wykidal, an attorney and EPL Prolong board member. While Burke opined that the issuance of a preliminary injunction would not cause any substantial economic harm to Appellants, Wykidal stated that a preliminary injunction would subject Appellants to the risk of a $2 million tax liability.
 
 
 47
 The district judge's findings demonstrate that he discredited Wykidal's declaration with respect to the potential tax liability. The district court noted in its order that Appellants essentially control the majority of voting shares of both EPL Prolong and Prolong International. As such, the court explained, Appellants easily can rescind the 1998 Agreement, thereby avoiding these potential financial difficulties.
 
 
 48
 Based on the record, we hold that the district court did not abuse its discretion in requiring Walczak to post a bond in the amount of $100,000 and, therefore, we affirm.
 
 
 49
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.
 
 
 [2]
 Rule 3-6 provides, in relevant part, that: "At any time prior to the completion of briefing in a civil appeal if the court determines: (a) that . . . an intervening court decision . . . requires reversal or vacation of the judgment or order appealed from or remand for additional proceedings . . . the court may, after affording the parties an opportunity to show cause, issue an appropriate dispositive order." Ninth Cir. R. 3-6 (1999).
 
 
 [3]
 UFTA provides that:
 A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
 (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
 (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
 (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
 (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they become due.
 Cal. Civ. Code S 3439.04 (West 1997).
 
 
 [4]
 Section 310(a)(3) addresses the situation where the authorization, approval, or ratification was based on a vote by the interested director. Sammis v. Stafford, 56 Cal. Rptr. 2d 589, 594 (Ct. App. 1996).