Nelson RAMOS, et al., Plaintiffs,

v.

Richard THORNBURGH, Attorney General of the United States, Defendant.

Civ. A. No. TY–89–42–CA.

United States District Court, E.D. Texas, Tyler Division.

July 21, 1989.

W. Michael Bonesio, Walter S. Cowger, Mary Spector, and Kare J. Sperstad–Mc-Elyea, Dallas, Tex., Robert Rubin, San Francisco, Cal., Richard Fischer, Nacogdoches, Tex., for plaintiffs,

Parker Singh, Asst. Director, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Ruth Harris Yeager, Asst. U.S. Atty., E.D. Tex., Tyler, Tex., for defendant.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

Plaintiffs in the above-entitled and numbered civil action have entered the United States from El Salvador, seeking refuge from the persecution they allege to have suffered in their native country. Each plaintiff has filed an application for political asylum pursuant to 8 C.F.F. § 208 (1986).[1] None of the plaintiffs has received a final determination on his or her application for asylum.

The Refugee Act did not specifically instruct the Attorney General to develop a procedure for permitting aliens to work while their applications for asylum are pending. Nonetheless, the Attorney General, through the Immigration and Naturalization Service (INS), promulgated the regulations contained in 8 C.F.R. § 274 (1986), which permit an alien who has filed an application for asylum to request temporary employment authorization. These regulations require the INS to adjudicate requests for employment authorization within sixty days, and to grant employment authorization to any alien who has filed a "nonfrivolous" application for asylum. 8 C.F.R. §§ 274a.12(c)(8) and 274a.13(a) (1986). Pending the resolution of their respective applications for asylum, the plaintiffs have each requested temporary employment authorization.

The factual allegations in the complaint are replete with descriptions of tortures, murders, rapes, and other atrocities similar to those that consistently fill the pages of newspapers and news magazines, and the screens of our television sets during the nightly news. It cannot seriously be disputed that El Salvador is a nation plagued by violence and terror. Nor, indeed, it is

---

1. Consistent with this country's long-standing policy of providing refuge to aliens fleeing their homelands because of persecution, Congress, in § 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (1982), directed the Attorney General to promulgate regulations under which an alien may apply for asylum. *See Diaz v. INS,* 648 F.Supp. 638, 646 (E.D.Cal.1986). 8 C.F.R. § 208 (1986) was published pursuant to that directive. A person who flees a country may be granted asylum in the United States, in the discretion of the Attorney General, if the Attorney General determines that the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). That section defines a refugee as any person who has fled a country and is unable or unwilling to return to the country (or to avail himself of the protection of that country) because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

disputed in this action that these plaintiffs themselves have been exposed to a number of extremely unsettling and distressing experiences, either violent or threatening in nature. Nevertheless, it is not for the court to determine at present whether these plaintiffs have made a sufficient showing in their asylum applications to qualify them for a discretionary grant of political asylum in the United States. The sole issues now before the court are:

(1) whether the defendant has fulfilled his obligation to adjudicate requests for employment authorization within sixty days or issue interim employment authorization;

(2) whether defendant has interpreted the term *nonfrivolous,* as it is contained in 8 C.F.R. § 274a.12(c)(8), in accordance with the law or has applied his interpretation, if lawful, in a manner that is arbitrary and capricious, or contrary to the law; and

(3) whether the defendant unlawfully prohibited plaintiff Menendez from requesting temporary employment authorization.

In addition, these issues are before the court in a motion for preliminary injunction. In this posture, the court is not called upon to resolve the issues on the merits, but merely to determine whether, *inter alia,* the plaintiffs have established a substantial likelihood of success on the merits.

This civil action was filed by thirteen named plaintiffs, individually and on behalf of all persons similarly situated. Because plaintiffs had not moved for class certification at the time of the oral hearing on their motion for preliminary injunction, the motion is considered as to the individual plaintiffs. Plaintiffs raise three claims in this action, and, therefore, the factual allegations of the individual plaintiffs can be divided logically into three general categories. First, plaintiffs Fuentez, German, Enamorado, Ramos, and Parada allege that their requests for temporary employment authorization has been pending for more

than sixty days without adjudication, and that they have not received interim employment authorization.[2] Second, plaintiffs Garcia, Cisneros, Vargas, Saravia, Miranda, Rosas, and Reyes allege that they were unlawfully denied employment authorization, because of an erroneous interpretation by the INS of its own regulations pertaining to temporary employment authorization. Finally, plaintiff Menendez claims that she was unlawfully prevented from filing a request for temporary employment authorization by an INS official.

### Relief Sought

In this motion for preliminary injunction, plaintiffs have demanded the following preliminary relief:

(1) to compel defendant immediately to grant interim employment authorization to the named plaintiffs who have had requests for employment authorization pending for more than sixty days;

(2) to prohibit defendant from finding an asylum application frivolous, unless the defendant determines that, assuming all the facts in support of the claim to be true, the plaintiff has failed to state a valid claim for asylum;

(3) to prohibit defendant from finding an asylum application frivolous *solely* on the basis of a negative advisory opinion regarding the asylum application from the Department of State Bureau of Human Rights and Humanitarian Affairs;

(4) to prohibit defendant from finding an asylum application frivolous *solely* on the basis of the denial of the asylum application by an INS District Director, an immigration judge, the Board of Immigration Appeals, or a United States Court of Appeals; and

(5) to compel defendant immediately to grant employment authorization to the named plaintiffs whose requests have been denied or rejected for adjudication.

**2.** Some of the plaintiffs in this category allege that they had received interim employment authorization, but that this interim authorization had expired and had not been extended, not-

withstanding the fact that their request for employment authorization had been pending for more than sixty days without an adjudication.

*Preliminary Injunction Standard*

To prevail on a motion for a preliminary injunction, plaintiffs must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened harm outweighs the harm to the opposing party if the preliminary injunction is granted; and (4) that granting the preliminary injunction will not disserve the public interest. *See e.g., Mississippi Power and Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir.1985); 7 *Moore's Federal Practice* § 65.04(1) (1988). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of proof on each factor. Such an injunction cannot be granted, if the movant fails to carry the burden of persuasion as to any of the four factors. *Libertarian Party of Texas v. Fainter*, 741 F.2d 728 (5th Cir.1984). Moreover, principles of equitable restraint counsel against the issuance of injunctive relief where the plaintiff has an adequate remedy at law. *See O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). The court will address each of these factors, *seriatim.*

*Substantial Threat of*
*Irreparable Harm*

■■■ It cannot validly be disputed that an unreasonable denial of work authorization, or an unlawful delay in adjudicating requests for work authorization, results in a substantial threat of harm to plaintiffs, by preventing them from working to support themselves pending resolution of their claims for asylum. Not only is an alien who engages in unauthorized employment deportable, 8 U.S.C. § 1251(a)(9) (1982), but an employer who hires an alien without employment authorization is subject to criminal sanctions. 8 U.S.C. § 1324a (1986). Consequently, an alien who is wrongfully denied employment authorization is compelled to rely on friends and relatives for support, to work illegally and risk deportation or adverse action on his asylum application, or, ultimately, to abandon his application for asylum. Thus, it seems clear that the threat of harm is substantial. *See National Center for Immigration Rights v. INS*, 743 F.2d 1365 (9th Cir.1984) (stating that "the hardship [to aliens] from being unable to support themselves and their dependents ... is beyond question").

Defendant argues, however, that loss of income is an injury that can be remedied adequately by a damages award, and thus does not constitute *irreparable* injury. In general, lost income and other economic loss that can be calculated and compensated by monetary damages will not be considered irreparable injury. 7 *Moore's Federal Practice* ¶ 65.04[1] at 65–55 (1989). In some circumstances, however, the illusory nature of a future damages award renders that remedy inadequate, even if the loss suffered was purely economic. *See Mississippi Power and Light v. United Gas Line*, 760 F.2d 618, 623–25 (5th Cir.1984) (holding that a refund in the event of a rate overcharge would be an inadequate remedy, and the harm would thus be irreparable). As with utility customers faced with unlawful rate increases, the particular circumstances of asylum applicants indicates that a sustained inability to work may constitute irreparable injury for these individuals, for two reasons.

First, asylum applicants, who are generally impoverished and come from poor families, are unlikely to have access to alternative income sources, such as income from assets or loans from family members. In fact, many may have come to the United States, in part, to help support members of a family who cannot support themselves in the applicant's native country. Monetary damages at some future time can never adequately compensate aliens living at or below the poverty line, for the hardships they must endure as a result of presently existing unlawful denials of employment authorization. *Cf. Mississippi Power and Light v. United Gas Pipe Line*, 760 F.2d 618, 625 (5th Cir.1984); *see also National Center for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir.1984); *Diaz v. INS*, 648 F.Supp. 638, 647–48 (E.D.Cal.1986) ("I am hard pressed to see how placing a refugee in a position where he or she must

break the law to survive during the years it may take for a decision on a political asylum application cannot be considered an irreparable hardship.").

Second, the inability to work for the extended period during which the asylum application is considered by the INS and federal courts may compel an applicant to abandon his or her asylum application and return to his or her native country. Not only would this deprive the applicant of the opportunity to urge his or her application through the entire review process, but would, in substantial likelihood, subject the applicant to even more severe persecution upon return to the country he or she has attempted to flee. In light of these considerations, it is determined that plaintiffs have met their burden of establishing substantial threat of irreparable harm.

### The Public Interest

To prevail in a motion for preliminary injunction, the movant need not establish that the issuance of the injunction will serve the public interest, but, rather, that such relief will not *disserve* the public interest. *Middleton–Keirn v. Stone*, 655 F.2d 609 (5th Cir.1981). In this instance, defendant premises his assertion that the public interest will be disserved on the same fears expressed by Judge Black in *John Doe I v. Meese*, 690 F.Supp. 1572 (S.D.Tex.1988). In that case, Judge Black manifested his concern that the adoption of plaintiffs' proposed standard would allow aliens to obtain employment authorization by "stating a few magic words which cannot be examined or compared with extrinsic evidence." *John Doe I*, 690 F.Supp. at 1575. In that regard, INS asserts that to grant plaintiffs' requested relief would result in a rash of unsubstantiated applications for asylum, filled with conclusory assertions of persecution, and filed solely to obtain employment authorization for the lengthy period during which the application is pending. That fear may be well-founded, given the nature of plaintiffs' proposed relief.

As discussed in more detail below, however, the apprehension is inapposite in this action, in view of the court's conclusion that a lawful application of the frivolousness standard contained in 8 C.F.R. § 274a(12)(c)(8) permits the agency to discredit claims in which the factual allegations are "inherently unbelievable," or the legal theories "indisputably meritless" or "unarguable." Consistent with this court's ruling, then, the agency need not assume all facts in an asylum application to be true when evaluating a request for temporary employment authorization, but, instead, may reasonably turn to determinations by the Department of State, immigration judges, or other credible outside sources to evaluate whether the claims are inherently unbelievable. Such an extrinsic check on the factual allegations may mitigate the fears expressed by defendant and Judge Black, without ignoring the liberal nature of the "frivolous" standard.

To some extent, the public may be disserved if the grant of temporary employment authorization to those aliens who will survive the less rigorous scrutiny to be ordered by the court—but would have fallen victim to the current INS application of their regulations—causes an increase in the workforce. Nonetheless, the defendant's decision to require the INS to grant temporary employment authorization to all aliens who file a nonfrivolous application for asylum was legitimately made through the regulatory process, and the public would not be disserved by this court's order compelling the INS to apply those regulations in a lawful manner.

### The Balance of the Threatened Harms

Upon consideration, it is determined that the threat of having to break the law to subsist or to return to a country where one may be subjected to persecution outweighs any harm that the issuance of an injunction would cause the INS. The defendant claims that the issuance of an injunction which relaxed the burden of proof imposed on a person seeking temporary employment authorization would result in "a flood of illegal aliens" who would create an "incredible burden" for INS that would "significantly harm the INS' ability to control our

boarders." As defendant has offered no evidence in support of these extreme predictions, however, credence cannot be given to them.

*Likelihood of Success on the Merits*

Having determined that plaintiffs have carried the burden of persuasion with respect to the first three requirements for the issuance of a preliminary injunction, the final, most difficult analysis is presented for resolution—whether plaintiffs have established a substantial likelihood of success on the merits. Because the probability of success is markedly different for the different categories of claims, each will be addressed, in turn, below:

1. *Applications for Temporary Employment Authorization Which Have Been Pending Without a Decision for More Than Sixty Days.*

Any plaintiffs who have had requests for employment authorization pending without a decision for more than sixty days are almost certain to prevail on the merits. 8 C.F.R. § 274.13(d) requires that the district director adjudicate a request for temporary employment authorization within sixty days from the date of receipt of the request. If the INS fails to adjudicate a request for temporary employment authorization within sixty days from the date of receipt, the agency has a duty to grant interim employment authorization for a period not to exceed 120 days. *John Doe I*, 690 F.Supp. at 1577 (S.D.Tex.1988). Defendant does not dispute the mandatory nature of this regulation.

Defendant does deny, however, that any plaintiffs have had requests pending for more than sixty days without adjudication or the issuance of interim employment authorization. Specifically, defendant claims that: (1) the requests of Enamorado and Ramos for temporary employment authorization have been adjudicated and denied; (2) German's request was adjudicated within sixty days and granted; and (3) Fuentez

and Parada have not filed requests for an extension of their interim employment authorization. Upon review of the voluminous evidence, affidavits, and arguments submitted in support of, and in opposition to, plaintiffs' motion for preliminary injunction, it appears that plaintiff Parada remains without an adjudication of her request for temporary employment authorization or interim authorization, and that more than sixty days have elapsed since her request was filed. Given the nondiscretionary nature of defendant's obligations in this regard, it seems apparent that plaintiff Parada will prevail on the merits of her claim.

2. *Employment Authorization for Aliens with Nonfrivolous Asylum Applications.*

The requirement that plaintiffs demonstrate a likelihood of success on the merits presents a more significant barrier to the issuance of preliminary injunctive relief, for plaintiffs whose requests for temporary work authorization were denied based on a finding that their asylum applications are frivolous. As noted above, 8 C.F.R. § 274a.12(c)(8) states that employment authorization shall be granted to "any alien who has filed a nonfrivolous application for asylum . . . ." Plaintiffs claim, in essence, that the INS is employing an incorrect interpretation of the term "nonfrivolous," or, in the alternative, has misapplied its own interpretation, which is, on its face, acceptable.[3]

Plaintiffs advance two arguments in support of this claim. First, plaintiffs contend that the INS' own interpretation of the term "nonfrivolous" requires that the plaintiffs be granted temporary employment authorization. Plaintiffs point to two memorandums—those of Norton and Thomas, respectively—which define a frivolous asylum request as one that is "patently without substance" and state that "frivolousness" is a threshold standard that does not rise to the merit of the appli-

---

**3.** Plaintiffs Vargas, Cisneros, Reyes, Enamorado, Ramos, and Rosas have each been denied temporary employment authorization based on a finding that his or her asylum application was frivolous.

cation. These memorandums were distributed by senior INS officials to INS agents entrusted with the task of evaluating applications for employment authorization. Therefore, plaintiffs contend, these definitions represent the agency's interpretation of its own regulations, which the agency is bound to apply in accordance with the law. In view of these definitions, plaintiffs claim that, as a matter of law, their applications are nonfrivolous. On the basis of this argument, plaintiffs demand that the court order the INS to grant temporary employment authorization to those plaintiffs whose applications for asylum have been erroneously determined to be frivolous.

Second, plaintiffs contend that, if the court were to apply an arbitrary and capricious standard of review, the determinations must still be overturned. As evidence of the arbitrary nature of the INS decisionmaking process in this regard, plaintiffs point to the fact that several of the named plaintiffs were initially denied work authorization, only to have that denial reversed when this civil action was filed.[4] Defendant responds that the issue of whether an asylum application is frivolous has been left to the sound discretion of the INS, and the agency's determinations can be overturned only if the court determines that the agency has acted in an arbitrary and capricious manner. The first matter before the court, then, is to determine what standard of review applies to the court's evaluation of defendant's determinations.

### a. Standard of Review

As a general matter, the court "must accord great deference to the interpretation given to an administrative regulation by the officers of the agency charged with its administration." *Bahramizadeh v. INS*, 717 F.2d 1170, 1172 (7th Cir.1983), *citing Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). When an agency is entrusted with the administration of a complex regulatory scheme, the arguments for deference to its interpretive judgments regarding its own regulations are most persuasive. *See Psychiatric Institute of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812, 814 (D.C. Cir.1981). This is particularly true when the agency at issue is the INS, who "must exercise especially sensitive political functions that implicate questions of foreign relations." *Id.; Hampton v. Mow Sun Wong*, 426 U.S. 88, 101–02 n. 21, 96 S.Ct. 1895, 1904–05 n. 21, 48 L.Ed.2d 495 (1976) ("[T]he power over aliens is of a political character and therefore subject only to narrow judicial review."). Deference to an agency's interpretation, nevertheless, must never be absolute. In particular, "the ordinary and obvious meaning of [a] phrase is not to be lightly discounted," *see Russello v. United States*, 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983), and an administrative interpretation deserves deference only so long as it is not inconsistent with the plain wording of the regulation. Thus, while a reviewing court must not set aside an agency's interpretation merely because it concludes that another interpretation is a better one, it is obligated to reject an interpretation that is plainly erroneous or inconsistent with the underlying regulation. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). It must be determined, then, whether the agency's interpretation of the statute is plainly erroneous or inconsistent with the plain wording of the regulation.

### b. The Word "Frivolous"

The word *frivolous* may be susceptible to many definitions. Webster's New Collegiate Dictionary defines frivolous as "of little weight or importance; lacking seriousness." According to Black's Law Dictionary, a pleading is frivolous when "it is clearly insufficient *on its face*," or "present[s] no justiciable question and [is] so readily recognizable as devoid of merit *on the face of the record* that there is little prospect that it can ever succeed." (Emphasis added.) In Roget's International Thesaurus (4th Ed.1977), the word friv-

---

4. Plaintiffs' argument in this respect is fortified by defendant's admission, during the oral hearing on the motion for preliminary injunction, that the applications of several other plaintiffs have been reconsidered and employment authorizations granted. Defendant provided no evidence that INS regulations authorize, require, or structure a reconsideration process.

olous is listed as a subdivision of the category "unimportance," and among its many synonyms are found "futile," "nugatory," and "unworthy of serious consideration."

Courts, too, have imparted many definitions to the term. The United States Court of Appeals for the Fifth Circuit has referred to a frivolous appeal as "baseless" and "insupportable," and as "presenting no colorable claims of error." *Crain v. Commissioner of Internal Revenue*, 737 F.2d 1417, 1418 (5th Cir.1984). The pleadings were further described as "a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish." *Id.* The Fifth Circuit later refined that definition, holding that an appeal is frivolous when it is not "commenced in good faith with the reasonable belief that [it is] currently supported by existing law, or justif[ies] an extension, modification or reversal of the current law." *Stelly v. Commissioner of Internal Revenue*, 761 F.2d 1113, 1116 (5th Cir.), *cert. denied* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). This definition mimics the language of Fed.R.Civ.P. 11, which was adopted to mandate sanctions for the filing of frivolous pleadings. A unanimous Supreme Court has recently defined a frivolous pleading as one which lacks an arguable basis in law or fact. *See Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

What is most important about the abundance of definitions for the word frivolous, is the similarity of their meanings. Absent subtle distinctions, each of the definitions discussed above relegates frivolousness to some level beneath meritless. In fact, in many instances where these definitions are provided, a distinction is expressly drawn between the term frivolous and the word meritless. In *Crain*, the Fifth Circuit stated that "[a]n appeal that lacks merit is not always—or often—frivolous." In a similar case, where a taxpayer challenged the federal income tax as unconstitutional, the Fifth Circuit said that "[m]any [appeals] that are eventually determined to be without merit are [not frivolous]" and asserted that it would "only impose sanctions when a meritless appeal is frivolous...." *Stelly v. Commissioner of Internal Revenue*, 761

F.2d at 1116. The Supreme Court in *Neitzke* drew the distinction between frivolousness and failure to state a claim, holding that a frivolous claim is one which is "without arguable merit," and that "a finding of failure to state a claim does not invariably mean that the claim is without arguable merit." *Neitzke*, 109 S.Ct. at 1830.

Upon reflection, the logic underlying this distinction becomes clear. At the very least, courts and commentators have identified three compelling reasons for divorcing the frivolous standard from the subsequent review of the merits. First, as Judge Karlton said in *Diaz v. INS*, 648 F.Supp. 638 (E.D.Cal.1986), the examiner applying the nonfrivolous standard must refrain from evaluating the merits of the underlying asylum application, lest he inadvertently frustrate the regulatory scheme. More specifically, Judge Karlton noted that the process of applying for asylum is a "complex and time-consuming procedure," involving many levels of appellate review; and it is only after such a review that an application can justifiably be labelled meritorious or meritless. To permit a finding that an application is "frivolous" based on a "tentative assessment of the strength of the asylum claim ... disregards the underlying assumption of the asylum procedure, that is, that the merits of the asylum claim cannot be finally resolved until the procedure is completed." *Diaz*, 648 F.Supp. at 652.

Second, to permit an examiner to resort to an informal evaluation of the merits to determine whether an asylum application is frivolous may deter the assertion of novel claims to political asylum, thereby ossifying the field of asylum law. In a provocative Note on the explosive use of Fed.R. Civ.P. 11 to impose sanctions for "frivolous" pleadings, a commentator noted that when the requirement in Fed.R.Civ.P. 11 that claims be "warranted by existing law" is construed to demand that pleadings be based on *established* law, it effectively discourages nonstandard claims, obstructing doctrinal development. In the context of requests for temporary employment autho-

rization, a system requiring that, in the determination of whether an application is nonfrivolous, an asylum application be based on established law would retard doctrinal development by discouraging or dismissing novel claims for asylum, in an area where the law is admittedly unsettled. *See, e.g. INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (holding that a "well-founded fear" of persecution is not the same as a "clear probability" of persecution, but declining to provide guidance on the meaning of "well-founded fear," even though that standard is applied inconsistently in United States Courts of Appeal).

Finally, to permit an examiner to dismiss as frivolous an asylum application that may not succeed on the merits in light of *existing* asylum doctrine, penalizes asylum applicants whose persecution may be different, but no less compelling, than that endured by the average refugee.

#### c. INS Interpretation

The INS interpretation of the term frivolous, as it is used in 8 C.F.R. § 274a.12(c)(8), appears to be consistent with the widely shared definitions and distinctions noted above. In his 1987 memorandum, Acting Commissioner Richard E. Norton, borrowing a general definition from the Board of Immigration Appeals, instructed INS agents that "a request for asylum [is] frivolous where it [is] patently without substance." Moreover, he distinguished the evaluation for frivolousness from an inquiry into the merits. " 'Frivolousness,' " Norton advised, "is a threshold standard which does not rise to the merit of the application." In light of this consistency, it cannot be said the agency's interpretation of its regulation is plainly erroneous, or inconsistent with the plain wording of regulation. Therefore, it is beyond the power of this court to interpose any other interpretation of the term frivolous.

#### d. INS Application of its Interpretation

■ Notwithstanding the court's determination that the INS interpretation of its regulations appears to withstand judicial scrutiny, the INS's application of its own

interpretation, in regard to individual determinations concerning an applicant's right to employment authorization, is also reviewable by the court. Judicial review of these determinations is limited by the familiar standards of the Administrative Procedure Act, 5 U.S.C. § 706 (1976). Accordingly, the determinations at issue must be upheld, unless they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976).

In this regard, plaintiffs contend that the term *frivolous* has an accepted meaning in the legal community, that that meaning is incorporated in the Norton memorandum, and that INS agents should remain faithful to this common understanding, when making individual determinations of whether an asylum application is frivolous. To maintain this fidelity, plaintiffs argue, an asylum application should be reviewed under the same standard that a district court would apply when evaluating a motion to dismiss, filed pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, plaintiffs argue that factual assertions made in an asylum application must be assumed to be true by the INS agent who reviews a request for temporary employment authorization. If this argument were upheld, only upon a determination that these assertions, if true, constitute a frivolous application, would INS be permitted to deny a request for employment authorization. Defendant opposes plaintiffs' suggestions, claiming that not only does the court lack power to impose such a standard on the INS, but that the practical effect of plaintiffs' proposal would be disastrous.

Plaintiffs' attempt to conflate the standards of frivolousness and failure to state a claim is ill-conceived, and, ultimately, unavailing. This is illustrated in the Supreme Court's recent decision in *Neitzke,* 109 S.Ct. at 1832. In *Neitzke,* the Supreme Court was called upon to examine the interrelationship between the frivolousness standard contained in 28 U.S.C. § 1915 and the standard of failure to state a claim under Fed.R.Civ.P. 12(b)(6). 28 U.S.C. § 1915 is designed to ensure that indigent

litigants have meaningful access to the federal courts, by permitting them to commence a civil or criminal action *in forma pauperis*. To prevent abusive or captious litigation, this statute also authorizes federal courts to dismiss a claim filed *in forma pauperis*, "if satisfied that the action is frivolous." *See id.* at 1831. Fed.R. Civ.P. 12(b)(6) permits a federal court to dismiss a complaint, if it fails to state a claim upon which relief could be granted. In *Neitzke*, the Supreme Court determined that a complaint that fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not necessarily frivolous, as that term is used in 28 U.S.C. § 1915. In so holding, the Court elucidated the differences between the two standards; and it provided guidance in the evaluation of plaintiffs' proposed injunctive relief in this action.

Writing for a unanimous court, Justice Marshall noted: "[I]t is evident that the failure to state a claim standard ... and the frivolousness standard ... were devised to serve distinctive goals." The Court defined a complaint as frivolous where it lacks an arguable basis in either law or fact, and pointed out that the standards of failure to state a claim and frivolousness differ in two significant respects. First, under a frivolousness standard, a court may "pierce the veil of [a] complaint's factual allegations and dismiss those claims whose factual contentions are *clearly* baseless." *Neitzke*, 109 S.Ct. at 1833 (emphasis added). As an example of such complaints, the court suggested "claims describing fantastic or delusional scenarios." *Id.* But under Fed.R.Civ.P. 12(b)(6), a district court must evaluate the proffered legal theory on the assumption that the factual allegations, however fantastic, are true. *See id.*

Second, the Court noted that the standards of failure to state a claim and frivolousness also differ in their application to legally insufficient complaints. In this respect, the Court pointed out that Fed.R. Civ.P. 12(b)(6) authorizes the dismissal of a complaint based on "a close but ultimately unavailing [legal theory]" as well as one relying on "an outlandish [theory]." *Id.* The frivolousness standard, on the other

hand, does not. Rather, this standard empowers a court to dismiss only those claims based on an "indisputably meritless" or "inarguable" legal theory, but not those "arguably meritorious legal theories whose ultimate failure is not apparent at the outset." *Id.*

To illustrate this distinction, the Court referred to several "close questions of federal law," which arose on motions to dismiss for failure to state a claim and which were substantial enough to warrant the Supreme Court's granting review. *See id.*, citing e.g. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). With respect to these cases, the Court said: "It can hardly be said that the substantial legal claims raised in these cases were so defective that they should never have been brought at the outset. To term these claims frivolous is to distort measurably the meaning of frivolousness both in common and legal parlance." *Id.*

As the foregoing discussion illustrates, plaintiffs' request that the court order defendant to evaluate the frivolousness of an asylum application under the standard of failure to state a claim must fail. The *Neitzke* decision also undermines the defendant's argument that an asylum application can be categorized as frivolous, on the basis of a determination that it fails to state a claim for asylum under existing law. Given the plain wording of the relevant regulations, a request for employment authorization may be rejected only if the underlying asylum application is "indisputably meritless" or "lacks an arguable basis in either fact or law." Moreover, while the INS may be justified in disbelieving an asylum application that describes "fantastic or delusional scenarios," it is not free, under the frivolous standard, to reject a request based on subtle credibility determinations regarding factual allegations in the application, whether those credibility determinations are made during informal interviews or in light of information gathered from objective, external research reports.

In many respects, a request for temporary employment authorization is analogous to a motion to reopen deportation proceedings to apply for asylum, pursuant to 8 C.F.R. § 3.2. In order to prevail on a motion to reopen, the movant must establish a *prima facie* case that he or she is a refugee—that is, has a well-founded fear of persecution. *See Ghadessi v. INS*, 797 F.2d 804, 805 (9th Cir.1986). To make such a showing, an alien "need only present an affidavit that is not inherently unbelievable, and that, if true, would establish a clear probability of future persecution." *Hernandez–Ortiz v. INS*, 777 F.2d 509, 514 (9th Cir.1985). More important, in *Ghadessi*, the Ninth Circuit held that the determination of whether an applicant has presented a *prima facie* case is not discretionary, and is to be reversed if not "correct" or "in accordance with the law." *Id.; accord Abudu v. INS*, 802 F.2d 1096, 1100 (9th Cir.1986). Upon review of the *Abudu* decision, the Supreme Court expressly declined to rule on the Ninth Circuit's decision that the interpretation of the term *prima facie* was nondiscretionary and subject to *de novo* review by federal courts. *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 911, 99 L.Ed.2d 90 (1988).

From the evidence adduced to date, it appears that defendant misapplies its interpretation of the term frivolous with respect to its review of both the factual allegations and legal theories underlying claims for asylum. Rather than denying requests for employment authorization based on a finding that the factual allegations in an asylum application are "inherently unbelievable," or "fantastic or delusional," it appears that defendant utilizes the interview process to make credibility determinations concerning these allegations. Defendant then denies as frivolous those requests in which the examiner, based on such an interview, finds the applicant to be "unconvincing," *see* Notes on Interview, File of Milton Honoris Rosa–Rivera, or in which an immigration judge has found the applicant to be "not particularly credible." *See* Declaration of Edward J. Czechowicz, Deportation Officer, at 6. Such subtle credibility determinations have no place in an evaluation under the frivolous standard.

In addition, an alien's responses in the interview appear to be used to contradict the factual allegations contained in the alien's asylum application, not to supplement them. Thus, for instance, Plaintiff Cisneros' request for employment authorization was denied, based on an interview in which the examiner found that the alien failed to articulate one of the five grounds for persecution. Yet, in his application for asylum, Cisneros alleges that he is a former member of a civil defense patrol, that he is known to have political opinions contrary to guerrilla forces in El Salvador, that he fears being killed by these guerrillas unless he agrees to join their ranks, and that he has received threats from the guerrillas. The factual allegations in this application are neither "inherently unbelievable" nor "fantastic or delusional." Moreover, these allegations specify that Cisneros is being persecuted because he holds a political opinion contrary to that of the guerrilla organization, one of the five grounds of persecution qualifying an alien for a discretionary grant of asylum, as specified in U.S.C. §§ 1101(a)(42)(A), 1158(a) (specifying a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" as constituting qualifications for asylum). The United States Court of Appeals for the Ninth Circuit has held that a specific threat of kidnapping or conscription by guerrillas (in El Salvador) aimed at a citizen who did not wish to join their ranks, may constitute a "well-founded fear of persecution." *See Arteaga v. INS*, 836 F.2d 1227 (9th Cir. 1988).

By reason of the similarity between the legal theory underlying Cisneros' asylum application and that considered by the Ninth Circuit *Arteaga*, it cannot reasonably be concluded that Cisneros' claim to asylum has no "arguable basis in law," unless his application is totally disregarded and the determination is made solely on the basis of the alien's responses during the interview. Nothing in the regulations authorizes the INS to entirely disregard the alle-

gations in an asylum application when evaluating a request for employment authorization. In fact, 8 C.F.R. § 274a(12)(c)(8) specifically directs the INS to determine whether the *application* is nonfrivolous. Thus, the use of an informal interview to contradict the factual allegations contained in an otherwise nonfrivolous application for asylum appears to be inconsistent with the plain wording of the regulation.

Finally, no mechanism exists in defendant's evaluation process by which defendant can consider whether a novel legal theory underlying an asylum application has an "arguable basis in law." Defendant routinely rejects requests for temporary employment authorization founded on asylum applications that do not precisely mimic the legal theories currently established in asylum law. The Supreme Court has stated, however, that a complaint that may fail on legal grounds is not necessarily frivolous. *See Neitzke,* 109 S.Ct. at 1833. Moreover, the Fifth Circuit has recently recognized the significant impact that subtle differences in legal theories may have on the success of an application for asylum. *See Sanchez–Perdomo v. INS,* 871 F.2d 119 (5th Cir.1989). In *Sanchez–Perdomo,* the Fifth Circuit concluded that, while required military service alone does not state a claim for asylum, a claim that an alien may be required to serve in the military *and* commit acts violating his political and moral beliefs may succeed, and is, at least, not frivolous. The current INS practice of granting employment authorization only when the application for asylum is premised on a legal theory recognized under established asylum law flies in the face of the frivolousness standard, and undermines

the goals that that standard is adopted to advance.[5]

Given this court's conclusion that defendant's application of the term nonfrivolous may be contrary to the law, plaintiffs have established a likelihood of success on this claim.

3. *Filing a Request for Temporary Employment Authorization from a Red Cross Shelter.*

■ Plaintiff Menendez, who is in the custody of the Brownville, Texas, Red Cross Shelter, claims that she was precluded from requesting temporary employment authorization when an INS official refused to accept her written request, and informed her that she could not apply for employment authorization until she was released from custody. This assertion is made only on behalf of Menendez, and is supported only by her affidavit. In response, defendant asserts that aliens at the Brownsville shelter are free to sign themselves out every day for the entire day, and that Mendenez could have signed herself out of the shelter and presented her application at a nearby INS office. Plaintiffs cite no authority for their argument that the alleged action violates INS regulations, nor do they assert that the INS official was following agency policy or acting in the customary manner of all INS officials.

Even if Menendez could meet the strict prerequisites for the issuance of a preliminary injunction, an even more fundamental problem precludes this court from addressing her claims for injunctive relief. To invoke the jurisdiction of the federal courts, Menendez must demonstrate that

---

**5.** The problem with defendant's failure to look beyond established law to determine whether an asylum application is frivolous is crystallized in *Cruz–Lopez v. INS,* 802 F.2d 1518 (4th Cir.1986). In *Cruz–Lopez,* the Fourth Circuit determined that the alien, a Catholic El Salvadoran male, had failed to establish either a "clear probability of persecution" or a "well-founded fear of persecution" grounded on evidence that he had received one threatening note of a type common to that country, but had never been otherwise threatened or harmed. Chief Judge Winter dissented. The dissenting opinion concluded that the handwritten note was rendered a credible threat by the general level of political violence attending the Salvadoran civil war, and, therefore, Cruz–Lopez had demonstrated a well-founded fear of persecution. Under defendant's current practice of denying as frivolous requests for work authorization based on asylum applications whose legal theories do not comport with established law, Cruz–Lopez would not have been eligible for employment authorization, notwithstanding the fact that he had filed an asylum application credible enough to convince Chief Judge Winter that he had sustained his burden of proof on the merits.

the issue she raises—the possibility that she will be precluded from requesting employment authorization—constitutes a justiciable case or controversy which plaintiff has standing to raise in federal court. Article III of the U.S. Constitution requires the plaintiff to show that the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 927 (5th Cir.1983), *aff'd* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984), *citing Railway Mail Ass'n. v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). This doctrine of justiciability is closely related to the rule that parties seeking relief in federal court must have standing to sue. The standing doctrine requires a party to demonstrate a "personal stake in the outcome" of a case. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). It is not enough that the plaintiff allege abstract injury from the challenged official conduct. Rather, she "must show that she has sustained or is immediately in danger of sustaining some direct injury as the result of the ... conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citations omitted).

With respect to her claims for preliminary injunctive relief, plaintiff Menendez has satisfied neither of these closely related prerequisites to bringing such a federal claim. The threshold requirements that a plaintiff must satisfy to demonstrate that she has standing to raise a justiciable controversy are most clearly laid out in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). There, Lyons sought damages arising out of injuries he had received from a chokehold administered by the Los Angeles police during a routine traffic stop, and an injunction prohibiting the use of chokeholds in all but situations when there is the threat of the immediate use of deadly force against the officer. The Supreme Court rejected Lyons' plea for injunctive relief for lack of standing, finding that Lyons had "failed to demonstrate a case or controversy with the City that would justify the equitable relief sought." *Lyons*, 461 U.S. 95, 106, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983). *See also Carter v. Orleans Parish Public Schools*, 725 F.2d 261 (5th Cir.1984). The court concluded that standing to challenge the city's actions was not established merely by the fact that plaintiff had been injured by the practice in the past, absent a credible assertion that he faced a real and immediate danger of suffering the same injury in the future. *Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

In this case, plaintiff has alleged that she was, on one occasion, told that she would be unable to file a request for temporary employment authorization. However, she has not alleged that she attempted to file this request in accordance with INS procedures, and, more important, fails to make a credible showing that, even if the INS agent's alleged action was unlawful, she is likely to be harmed by a repetition of this action in the future. In *Lyons*, the Supreme Court held that the mere allegation that the challenged conduct was authorized by the city is insufficient to make such a showing. *Lyons*, 461 U.S. at 107, 103 S.Ct. at 1668. The Court required the plaintiff to make a credible showing that "he, himself, will not only again be stopped by the police, but will also be choked without any provocation or legal excuse." *Lyons*, 461 U.S. at 106 n. 7, 103 S.Ct. at 1667 n. 7. Thus, in order to raise a case or controversy, plaintiff would not only have to allege that she was unlawfully precluded from filing her request, but also that the INS ordered or authorized its agents to act in such a manner and that she is likely to be a victim of this unlawful activity in the future.

The United States Court of Appeals for the Fifth Circuit applied the *Lyons* analysis in a recent decision, emphasizing the importance of the requirement that the plaintiff allege a "credible threat" of future injury that is "more than a mere speculative and remote possibility." *Hill v. City of Hous-*

*ton, Tex.,* 764 F.2d 1156, 1161 (5th Cir. 1985), *cert. denied.* 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987). The plaintiff in *Hill* had been arrested four times under the challenged ordinance, and "repeatedly and steadfastly" asserted that he would continue to act in such a manner as to subject himself to future arrests. *Id.* Under these circumstances, the Fifth Circuit found that Hill had established a sufficiently realistic threat of future injury to satisfy the threshold requirements of standing and justiciability in his suit for declaratory and injunctive relief.

Plaintiff in this case, however, has failed to allege any such facts that would render her likelihood of future injury any more than a remote and speculative possibility. Thus, because Menendez has failed to adequately invoke the jurisdiction of the federal courts, the motion for preliminary injunction must be denied as moot as to her claims; and her claim for permanent injunctive relief against the Attorney General should be dismissed.

### *Conclusion*

The court's distress at the violence and terror inflicted on civilian victims of the tragic civil war in El Salvador cannot be overstated. Nor should its considerable respect for the manner in which the INS has risen to the complex and formidable challenge of controlling the influx of illegal immigrants into this country from Central and South America be deprecated. The motion before the court does not require that these sympathies be balanced. Rather, plaintiffs have asked the court to evaluate whether defendant's regulations are lawful, and whether the INS applies these regulations in a lawful manner. Indeed, as these issues are raised in a motion for preliminary injunction, the court must determine not that plaintiffs have prevailed on the merits, but only, *inter alia,* that they have established a substantial likelihood of success on the merits. Because all plaintiffs but Menendez have made such a showing with respect to one of their claims, it is determined that, as to them, the mo-

tion for preliminary injunction should be granted in part and denied in part.