**Victoria Mejia GRIJALVA, Plaintiff,**

v.

**David ILCHERT, Director of the Immigration and Naturalization Service et al., Defendant.**

**No. C–93–0170.**

United States District Court, N.D. California.

March 2, 1993.

---

Jonathan Kaufman, Alan Kaufman, San Francisco, CA, for plaintiff.

Renetta Smith, U.S. Atty's. Office, San Francisco, CA, for defendant.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. Background

Plaintiff is a twenty-nine year old citizen of El Salvador who entered the United States without inspection or about March 7, 1992.

On April 27, 1992, Plaintiff applied to the United States Immigration and Naturalization Service (INS) for political asylum and temporary employment authorization.

In Plaintiff's asylum application, prepared in pro per, she wrote that she left El Salvador because of fears arising out that country's civil war. In describing her reasons for seeking asylum, Plaintiff wrote that she feared returning to El Salvador because she had cousins who were "killed by guerrillas" on account of their service in the Salvadoran government army. She further explained that while she lived in El Salvador, guerrillas "taunt[ed] and threatened" her because she has not "approved or participated with the guerrillas." Complaint for Declaratory Judgment and Injunction, Exh. A question 21.

On June 8, 1992, the INS deemed Plaintiff's application frivolous. It denied Plaintiff employment authorization on the ground that Plaintiff failed to allege any statutory basis on which she had been or might be persecuted. Because there is no administrative appeal from an INS decision denying employment authorization, Plaintiff filed a complaint in federal district court.

Plaintiff now moves for a preliminary injunction prohibiting Defendants from withholding employment authorization documents. Defendants oppose Plaintiff's motion and move to dismiss for failure to state a claim upon which relief can be granted.

### II. Discussion

#### A. Preliminary Injunction

In determining whether a preliminary injunction should issue, the Court must consider four factors: (1) the likelihood of success on the merits; (2) the threat of irreparable injury to Plaintiff if the injunction is not imposed; (3) whether the harm to the moving party in the absence of an injunction outweighs the harms to the non-moving party if the injunction is issued; and (4) the public interest. *Alaska v. Native Village of Venetie,* 856 F.2d 1384 (9th Cir.1988).

■ The Ninth Circuit has collapsed these factors into a two-prong test. To obtain a preliminary injunction, the moving party

must demonstrate either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships sharply favors the moving party. *National Center for Immigrants' Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir.1984) *citing Beltran v. Myers*, 677 F.2d 1317, 1320 (9th Cir.1982). These standards are not separate tests, "but are the ends of a continuum; the greater the relative hardship to the moving party, the less probability of success must be shown." *National Center for Immigrants' Rights, Inc.*, 743 F.2d at 1369 *citing Benda v. Grand Lodge of the Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir.1978) *cert. dismissed* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). Plaintiff has met her burden under this test.

### B. Likelihood of Success on the Merits

■ In determining whether Plaintiff is likely to prevail on the merits, the Court need not consider whether her application for asylum in the United States will ultimately be approved. The sole issue before the Court is whether Plaintiff is likely to succeed in proving that Defendants unlawfully prohibited Plaintiff from obtaining employment authorization while her asylum application was pending.

Under United States immigration law, a person who flees a country may be granted asylum in the United States, if the Attorney General determines that the alien is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A).[1] An alien who has filed an application for asylum may request authorization to work in the United States while the asylum application is pending. 8 C.F.R. § 274 (1986). Under the regulations governing the granting of employment authorization, the asylum officer "shall grant employment authorization" to "any alien who has filed a nonfrivolous application for asylum...." 8 C.F.R. § 274a.12(c)(8). If an application for asylum is "nonfrivolous", the INS must grant the applicant employment authorization while the asylum application is pending.

In determining whether the INS properly concluded that Plaintiff's asylum application was "frivolous" and that, as a result, Plaintiff was not entitled to employment authorization, the scope of the Court's review is limited. As a general matter, the Court "must accord great deference to the interpretation given to an administrative regulation by the officers of the agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Deference to an agency's interpretation, however, is not absolute. While a reviewing court must set not set aside an agency's interpretation merely because it concludes that another interpretation is better, it must reject an interpretation that is plainly erroneous or inconsistent with the underlying regulation. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *see also, Ramos v. Thornburgh*, 732 F.Supp. 696, 702 (E.D.Tex.1989). Moreover, in determining whether an agency properly applied its own interpretation of its regulations in a particular case, a court may set aside the agency decision only if the decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Thus, the Court can set aside Defendants' finding of "frivolousness" and their denial of Plaintiff's employment authorization as an abuse of discretion if those decisions "were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group...." *Chadha v. I.N.S.*, 634 F.2d 408, 429 (9th Cir.1980) *aff'd. on other grounds*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1980); *see also Dallo v. I.N.S.*, 765 F.2d 581, 588 (6th Cir.1985).

Plaintiff appears likely to succeed on her claim that Defendants abused their discretion in concluding that Plaintiff's asylum application was frivolous. Defendants have departed from established policies and have failed

---

1. Under 8 U.S.C. § 1101(a)(42)(A), a "refugee" is any person who has fled a country and is unable or unwilling to return because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion.

to apply the established definitions of "frivolous" in considering Plaintiff's employment authorization application.

INS regulations define "frivolous" as "manifestly unfounded or abusive." 8 C.F.R. § 208.7(a). The INS has issued several policy memoranda to INS employees explaining how a determination of "frivolousness" should be made. Thus, in 1987, INS Acting Commissioner, Richard E. Norton, instructed INS agents that "a request for asylum [is] frivolous where it [is] patently without substance." Distinguishing the evaluation of frivolousness from an inquiry into the merits of the asylum application, Norton advised "[f]rivolousness is a threshold standard which does not rise to [a consideration of] the merit of an application." Norton Memorandum, *cited* in *Ramos*, 732 F.Supp. at 704.

Similarly, in a 1992 Memorandum to Asylum Office Directors and Service Center Directors ("Inzunza Memo"), Deputy INS Commissioner Ricardo Inzunza advised that a non-frivolous application "presents a claim of fear of return to the applicant's country supported by facts, which is [sic] related to one of the five statutory grounds of persecution." The Inzunza Memo notes:

> "[w]hile it is necessary for the applicant to submit facts *in support of* the application, it is not necessary for these facts to *prove a well-founded fear of persecution* in order for the application to be non-frivolous. An application that does not on its face appear eligible for asylum is non-frivolous if it is supported by at least one fact and is related to a statutory ground of persecution.... Great detail is *not required* to meet the non-frivolous threshold." (emphasis in original).

These interpretations of the term "frivolous" in the employment authorization regulations are consistent with the plain meaning of the term "frivolous" and with the underlying regulations.

Defendants, however, appear not to have followed their own interpretations in determining that Plaintiff's asylum application is frivolous and that she does not qualify for work authorization. Defendants argue that the decision denying Plaintiff's work authorization is justified because Plaintiff has alleged only a generalized fear of violence and her claim fails to establish a presumption of a "well-founded fear of persecution." Defendants' arguments mischaracterize both the nature of Plaintiff's allegations and the law governing her eligibility for employment authorization. The record establishes that Plaintiff has alleged the specific fact that before she left El Salvador, she was taunted and threatened for refusing to support or approve of the Salvadoran guerrillas. Moreover, Defendants' argument that Plaintiff has failed to establish a presumption of a "well-founded fear of persecution" is irrelevant to a finding of frivolousness. Regardless of whether or not Plaintiff's allegations appear detailed enough to establish a "well-founded fear or persecution" and eligibility for asylum, Plaintiff does specifically allege past persecution on account of political belief and states at least one fact in support of her claim, i.e. that she was taunted and threatened by guerrillas for refusing to support them. This claim meets the "non-frivolous" standard as defined by INS policy directives. Even though her asylum application may not be approved ultimately, the application it is not "patently without substance." Moreover, there is no indication in the record that Plaintiff brought her asylum application in order to delay or for any other improper purpose which might lead a reviewing body to conclude that the application was frivolous. Thus, Plaintiff has established that she will likely succeed on the merits in her request for employment authorization.

### C. Threat of Irreparable Injury

Plaintiff has also established a threat of irreparable injury. An unreasonable denial of Plaintiff's work authorization, which would prevent Plaintiff from working to support herself pending resolution of her claim for asylum, would cause Plaintiff substantial and potentially irreparable harm. In order to support herself without a work permit, Plaintiff may feel compelled to engage in unauthorized employment while her application for asylum is pending. Not only is an alien who engages in unauthorized employment deportable, 8 U.S.C. § 1251(a)(9), but an employer who hires an alien without employment authorization may be subject to criminal sanc-

tions. 8 U.S.C. § 1324(a). Consequently, an alien who is wrongfully denied employment authorization is compelled to rely on friends and relatives for support, to work illegally and risk deportation or adverse action on his asylum application, or, ultimately, to abandon his application for asylum. *Ramos*, 732 F.Supp. at 699. Thus, the threat of substantial and irreparable injury from improper denial of employment authorization is beyond question. *See, National Center for Immigrants' Rights*, 743 F.2d at 1369.

The foregoing constitutes the Court's findings of facts and conclusions of law.

Accordingly,

Defendants are HEREBY ORDERED to issue to Plaintiff employment authorization documents pursuant to 8 C.F.R. § 274a.12(c)(8).

Defendants' Motion to Dismiss is DENIED.