CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent. I disagree that Plaintiffs are likely to succeed on the merits of their claims that the City of Los Angeles (the “City”) violated their protected interests under the Fourth Amendment and under the due process clause of the Fourteenth Amendment. The pivotal question under both Amendments is not whether Plaintiffs had a property interest in the items seized — they may very well have had such an interest — but whether that interest is one that society would recognize as reasonably worthy of protection where the personal property is left unattended on public sidewalks. Because under the due process standard, society does not recognize a property interest in unattended personal property left on public sidewalks, the City’s health and safety concerns allow it to seize and dispose of such property.
In this case, Plaintiffs left their personal property unattended on the sidewalks. They did so despite the numerous 10593 signs blanketing Skid Row that specifically warned that personal property found on the sidewalks in violation of the Los Angeles Municipal Code section 56.11 (the “Ordinance” or “LAMC § 56.11”) would be seized and disposed of during scheduled clean-ups. The majority impermissibly stretches our Fourth Amendment jurisprudence to find that Plaintiffs had a protected interest in their unattended personal property. In addition, because Plaintiffs have not demonstrated a protected property interest, I would reverse the district court’s ruling that Plaintiffs established a likelihood of success on the merits of their claim under the Fourteenth Amendment.
I. Background
In order to combat the problem created by excessive accumulation of unattended personal property on the public sidewalks of the area in downtown Los Angeles commonly known as “Skid Row,” the City conducts regular and scheduled street cleaning in accordance with the Ordinance. The Ordinance provides that: “No person shall leave or permit to remain any merchandise, baggage or any article of personal property upon any parkway or sidewalk.” LAMC § 56.11. Pursuant to the Ordinance, the City posted approximately *1034 78 signs throughout the Skid Row area warning that street cleaning would be conducted Monday through Friday between 8:00 a.m. and 11:00 a.m. and that any unattended property left at the location in violation of the Ordinance would be disposed of at the time of clean-up. These signs advised:
Please take notice that Los Angeles Municipal Code section 56.11 prohibits leaving any merchandise, baggage or personal property on a public sidewalk. The City of Los Angeles has a regular clean-up of this area scheduled for Monday through Friday between 8:00 and 11:00 am. Any property left at or near this location at the time of this clean-up is subject to disposal by the City of Los Angeles.
In expressly providing notice about when the street cleaning will take place, the City allows Skid Row residents to prepare ahead of time for the cleaning by making sure that their personal property is either removed from the sidewalks or is attended. Additionally, there is a warehouse in Skid Row open to the public during regular business hours, which is sponsored by the Business Improvement District in the Central Division. This warehouse provides a location for people to store their personal property free of charge.
During the scheduled street clean-ups, the City workers and police escorts make an effort to remove only items that appear to have been abandoned, such as items that have remained in the same location for several days or items that pose a health and safety hazard, including rotting food, human fecal matter, and drug paraphernalia. Despite these efforts by the City to balance health and safety concerns with private property concerns, Plaintiffs allege that the City removed and immediately destroyed personal property that was not permanently abandoned but was temporarily left unattended. Plaintiffs claim that because they are homeless, they have no option but to leave their personal property unattended on public sidewalks during the regularly scheduled clean-ups in order to get food, shower, use the bathroom, obtain medical care and other private and government services, and go to work.[1] However, Plaintiffs do not explain why they cannot make use of the free public storage warehouse or make ar *1035 rangements for their property to be attended during the brief three-hour windows of scheduled clean-ups.
On April 5, 2011, Plaintiffs filed their class action complaint against the City under 42 U.S.C. § 1983, alleging violations of their Fourth and Fourteenth Amendment rights. On Plaintiffs’ request, the district court then issued a temporary restraining order (the “TRO”) and ordered the City to show cause as to why a preliminary and/or permanent injunction should not issue. On June 23, 2012, the district court issued the preliminary injunction. In issuing the injunction, the court made factual findings that the City was removing and disposing of not only “abandoned” property but also personal property that was “unattended but not abandoned.” The district court found that Plaintiffs were likely to succeed on the merits of their Fourth and Fourteenth Amendment claims and enjoined the City from:
1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and
2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.
The court also directed the City to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.
On July 25, 2011, the City timely appealed the district court’s order granting the preliminary injunction.
II. Analysis
On appeal, the City does not challenge the district court’s factual finding that it removes and disposes of personal property left unattended, but not abandoned, on the City sidewalks during its scheduled street cleanings. Although the majority focuses on the finding that the property was not abandoned, the fundamental' issue is whether Plaintiffs relinquished their privacy and property interests by leaving their personal property unattended on public sidewalks in violation of the Ordinance and in spite of the warning signs.
A. Standard of Review
We review a district court’s decision granting a preliminary injunction for abuse of discretion. Bay Area Addiction & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir.1999). “In issuing a preliminary injunction, a district court abuses its discretion by basing its decision on either an erroneous legal standard or clearly erroneous factual findings.” Walczak v. EPL Prolong, Inc., 198 F.3d 725, 730 (9th Cir.1999). “A district court’s decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate legal standards, the court misapprehends the law with respect to the underlying issues in the litigation.” Id. (citing Sports Form Inc. v. United Press International, Inc., 686 F.2d 750, 752 (9th Cir.1982)).
B. Plaintiffs Lacked an Objectively Reasonable Expectation of Privacy in Their Unattended Personal Property under the Fourth Amendment.
“To invoke Fourth Amendment protection, Plaintiffs must have both a subjective and an objectively reasonable expectation of privacy.” Katz, 389 U.S. at 361, 88 S.Ct. 507 (1967). Under Katz, it is not sufficient to have a property interest. There must also be an objectively reason *1036 able expectation of privacy in that property interest. Id. In order to determine whether an expectation of privacy is reasonable, “Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?”[2] California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).
No circuit court has expanded the right to be free from unreasonable searches and seizures to a right to leave unattended personal property on public land in violation of a law prohibiting that conduct. The few cases that have addressed similar issues lead to the conclusion that Plaintiffs lacked an objective expectation of privacy that society recognizes as reasonable. These cases have consistently held that a person who unlawfully takes up temporary residence on public property without a permit or permission lacks an objectively reasonable expectation of privacy. See, e.g., Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir.1994) (“The Constitution does not confer the right to trespass on public lands. Nor is there any constitutional right to store one’s personal belongings on public lands.”); United States v. Ruckman, 806 F.2d 1471, 1472 (10th Cir.1986) (reasoning that a trespasser living in a cave on federally-owned land did not have an objectively reasonable expectation of privacy); Amezquita v. Hernandez-Colon, 518 F.2d 8, 11-12 (1st Cir.1975) (concluding that squatters who unlawfully camped on public land did not have an objectively reasonable expectation of privacy for Fourth Amendment purposes). Further, we have similarly concluded that a trespasser on private state property did not have an objectively reasonable expectation of privacy. Zimmerman v. Bishop Estate, 25 F.3d 784, 787-88 (9th Cir.1994).
Plaintiffs attempt to distinguish these eases by reasoning that they are not squatters or trespassers as they have a right to occupy the public sidewalks. Plaintiffs do have a right to use the public sidewalks, but this does not mean that they may leave personal property unattended on the sidewalk, particularly where the Ordinance prohibits it and multiple signs expressly warn the public that unattended personal property “is subject to disposal by the City of Los Angeles.”[3] The issue is not whether Plaintiffs illegally occupied the sidewalks; they did not. However, like the plaintiffs in Amezquita, Zimmerman, and Ruckman, Plaintiffs violated the law. They left their personal property unattended on the City’s sidewalks, in clear violation of the City’s Ordinance prohibiting that conduct. Amezquita, Zimmerman, and Ruckman stand for the proposition that the unlawfulness of the plaintiffs’ conduct negates the objective reasonableness of their expectation of privacy. In other words, by leaving their property unattended in violation of the City’s Ordinance and in the face of express notice that their property would be removed during the scheduled clean-ups, Plaintiffs forfeited any privacy interest that society recognizes as objectively reasonable.
*1037 Despite this ample case law, the majority finds that Plaintiffs did not need to have a reasonable expectation of privacy. See Maj. Op. at 1028-29. In the majority’s view, the problem with framing the Fourth Amendment question around whether the claimant had a “reasonable expectation of privacy” is that the Supreme Court, in Soldal v. Cook County, 506 U.S. 56, 64, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), clarified that Katz did not “snuff[ ] out the previously recognized protection for property under the Fourth Amendment.” Maj. Op. at 1028. The majority asserts that Katz and its progeny were meant to expand the Fourth Amendment analysis to include consideration of privacy rights, in addition to property rights. Id. at 1028-29.
Soldal does not support Plaintiffs’ professed expectation of privacy because Plaintiffs took actions that are, at a minimum, inconsistent with our society’s reasonable expectations of privacy. In Soldal, the plaintiffs mobile home was seized while it was parked on mobile home park property, but because there was not yet a judicial order of eviction, it was parked there legally. Soldal, 506 U.S. at 60, 67-68, 113 S.Ct. 538. Thus, as a matter of law, the plaintiff there had yet to take any action that might relinquish his reasonable expectations of privacy. Id. However, here, Plaintiffs chose to leave their property unattended on public sidewalks despite being warned that their property would be seized during the limited hours of regularly scheduled street-cleanings. Soldal concerned the seizure of personal property that was legally parked in a mobile home area; whereas here, Plaintiffs left their property unattended in violation of the Ordinance prohibiting them from doing just that. In doing so, their expectation of privacy diminished below the level of privacy that society recognizes as reasonable.[4]
The importance of determining whether Plaintiffs had an expectation of privacy that society recognizes as reasonable was recently reaffirmed by the Supreme Court in United States v. Jones: “We have embodied that preservation of past rights in our very definition of ‘reasonable expectation of privacy’ which we have said to be an expectation ‘that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.’ ” — U.S. -, 132 S.Ct. 945, 951, 181 L.Ed.2d 911 (2012) (quoting Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)). In other words, the Supreme Court confirmed that the question whether a property-owner’s professed expectation of privacy is reasonable is closely related to the question whether the expectation is one that society is willing to recognize as reasonable. See id.
The Supreme Court clarified in Jones that while individuals have a protected property interest in their personal property, the interest still must be “recognized and permitted by society.” See Jones, 132 S.Ct. at 949-52. The interests recognized by society as valid do not include unattended personal items left on public property in violation of the law. The majority is concerned that if a “[violation of a City ordinance [ ] vitiate[s] the Fourth Amendment’s protection of one’s property,” then “the government could seize and destroy any illegally parked car or unlawfully unat *1038 tended dog without implicating the Fourth Amendment.”[5] Maj. Op. at 1029. The more apt comparison is leaving an unattended bag in the airport terminal or a train station, where travelers are warned that such unattended personal property-may be immediately seized and destroyed.[6] In the hypothetical of an illegally parked vehicle, there is no warning that the vehicle, in addition to being ticketed and towed, will be destroyed. Here, just as in the airport hypothetical, the City has a legitimate interest in immediately destroying personal property left on the streets rather than storing it for health and safety reasons.[7] Unfortunately, in light of the incidents of domestic terrorism, the City must be concerned with potential dangers arising from a cart, box, bag, or other container left unattended in a public place as they could easily contain bombs, weapons, or bio-hazards.[8]
Accordingly, following Jones, this case turns on society’s notions of expectations of privacy. Cfi Jones, 132 S.Ct. at 951. Common sense and societal expectations suggest that when people leave their personal items unattended in a public place, they understand that they run the risk of their belongings being searched, seized, disturbed, stolen, or thrown away. In other words, their expectation of privacy in that property is not one that “society [is] willing to recognize ... as reasonable.” Ciraolo, 476 U.S. at 211, 106 S.Ct. 1809. Thus, even if Plaintiffs maintained a sub *1039 jective expectation of privacy in their property despite having left it unattended on the public sidewalk, the risks to society are too great to recognize the expectation as reasonable. Accordingly, because the dis^ trict court misapprehended the law, its ruling should be vacated.
C. Plaintiffs Did Not Have a Property Interest in their Unattended Personal Property Under the Fourteenth Amendment.
The Supreme Court has set forth a two-part test for analyzing a due process claim: “We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment’s protection of ‘life, liberty or property’; if protected interests are implicated, we then must decide what procedures constitute ‘due process of law.’ ” Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). I agree with the City that “because no constitutionally protected property interest is implicated by the City’s purported conduct, the district court should never have addressed the second step of the due process analysis.”
Property interests “are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In this way, the first step of the due process inquiry is very similar to the second inquiry of the Fourth Amendment test. The City does not dispute that Plaintiffs had a protected property interest in the personal property itself. The question is whether the Plaintiffs’ actions in leaving their personal property unattended in a public place altered their property interest to one that society does not accept as reasonable. While this is a novel question of law, we are not wholly without guidance on this question.
Much like the objective reasonableness analysis under the Fourth Amendment inquiry, protected property interests under the due process inquiry “are defined by existing rules or understandings” of our society, and “unilateral expectation[s]” are insufficient to create a protected interest. See Bd. of Regents, 408 U.S. at 577, 92 S.Ct. 2701. There is thus an objective element to the standard. However, the majority has not identified “an existing rule or law creating or defining this protected property interest.” See id. The Eleventh Circuit has held that there is no “constitutional right to store one’s personal belongings on public lands” regardless of subjective expectations. Church, 30 F.3d at 1345. Similarly, in this case, there do not appear to be any “existing rules or understandings” that provide Plaintiffs with an objectively protected interest that allows them to leave their belongings unattended on public sidewalks, even if temporarily.
California Penal Code section 647c provides that cities have the power to “regulate conduct upon a street, sidewalk, or other place or in a place open to the public.” Although this law is not definitive, it does suggest that California’s “existing rules or understandings” weigh in favor of the City. See Bd. of Regents, 408 U.S. at 577, 92 S.Ct. 2701. This is particularly the case where, as here, the preliminary injunction effectively prevents the City from carrying out its normal function of cleaning its sidewalks without risking legal liability. The courts should be reluctant to find a protected property interest where, as here, the result has far-sweeping implications for cities across the country, including their basic responsibility for public health and safety. This is precisely why the Supreme Court has cautioned that *1040 “the range of interests protected by procedural due process is not infinite,” and has instructed the lower courts to focus on whether the property interest in question is recognized by “existing rules or understandings.” Bd. of Regents, 408 U.S. at 570-71, 577, 92 S.Ct. 2701. Also, Plaintiffs’ claim that they maintain a property interest in personal property left unattended on public sidewalks is undercut by the fact that any citizen walking by the property could disturb or remove it.
Ultimately, Plaintiffs have not met their burden of citing any “existing rules or understandings” beyond their own “unilateral expectation^]” to support their claim that they had a protected property interest in their unattended personal items. Cf. Bd. of Regents, 408 U.S. at 577, 92 S.Ct. 2701. Thus, under Board of Regents, they have not demonstrated a protected property interest warranting the second step in the due process analysis. Cf. Ingraham, 430 U.S. at 672, 97 S.Ct. 1401. Because Plaintiffs’ claim fails at the first step of the due process inquiry, I would reverse the district court’s ruling that Plaintiffs are likely to succeed on the merits of their Fourteenth Amendment claim.[9]
III. Conclusion
The majority has “misapprehend[ed] the law with respect to the underlying issues in the litigation.”[10] Cf. Walczak, 198 F.3d at 730. The Fourth Amendment does not protect unattended personal property left on public sidewalks because the owners, by leaving their property unattended, have relinquished their objectively reasonable expectation of privacy in the property. Moreover, under both the second inquiry under Katz and the first step of the Fourteenth Amendment analysis, Plaintiffs’ actions in leaving their personal property unattended in a public place reduced their interest in that property to one not within our existing societal rules and understandings. Whatever privacy or property interest Plaintiffs may have had in the property lost social recognition when the property was left unattended on the public sidewalks. Moreover, because Plaintiffs lack a protected property interest in their unattended personal items, I would not reach the second step of the due process analysis. Because society does not recognize Plaintiffs’ alleged privacy and property interests as reasonable, I dissent.

. Although I sympathize with the plight of the homeless and believe that this is a problem that we must address as a society, a § 1983 action is not the proper vehicle for addressing this problem. The majority opinion focuses on the interests of the homeless in Skid Row who leave their property unattended and does not acknowledge the interests of the other people in Skid Row — homeless or otherwise— who must navigate a veritable maze of biohazards and trash as they go about their daily business. Certainly, the City is charged with protecting the health and safety of individuals who comply with the law but are forced to live in the unsanitary and unsafe conditions created by other residents. Those conditions include human waste, dead animals, and weapons. For example, during a recent clean-up, the City removed "278 hypodermic needles, 94 syringes, 60 razor blades, 10 knives, 11 items of drug paraphernalia,” and "[t]wo 5-gallon buckets of feces.” See Alexandra Zavis, "Nearly 5 tons of trash collected in L.A. skid row sweep,” L.A. Times, July 9, 2012, available at http://latimesblogs.latimes. com/lanow/2012/07/tons-of-trash-collected-mla-skid-row-sweep.html. Although the City does not challenge the district court’s rulings on the balance of hardships and advancement of the public interest under Winter, because of the City’s duty to maintain clean and safe sidewalks, I would find that these factors weigh in the City's favor. See Winter v. Natural Res. Def. Council, 555 U.S. 7, 20-21, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (concluding that the public interest, as advanced by the Navy, in conducting training exercises with active sonar in realistic conditions outweighed the interest in preventing possible injury to an unknown number of marine mammals).

. Plaintiffs, by leaving their personal property on the sidewalks unattended, raise doubts as to whether they "manifested a subjective expectation of privacy” under the first step of the Katz test. However, the City does not dispute the district court's finding that Plaintiffs had a subjective expectation of privacy in their personal property. Thus, I focus on the second step of the Katz test.

. Plaintiffs assert that in several instances, the City seized personal belongings packed neatly in carts and despite the protests of persons on the scene. Perhaps the City erred in determining that the property was unattended, and accordingly may face some liability, but this does not mean that the City may not seize and immediately dispose of materials it reasonably determines to be unattended.

. If the City, in searching unattended personal property on its sidewalks, discovered illegal drugs or other evidence of criminal activity, the owner of the property would not likely succeed in a motion to have the evidence suppressed in a criminal prosecution. Cf. California v. Greenwood, 486 U.S. 35, 40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (holding that there was no reasonable expectation of privacy in the contents of plastic garbage bags left on or at the side of a public street).

. The majority does not really argue that a City may not seize an illegally parked car or an unlawfully unattended dog. Thus, it would appear that the majority’s real concern is not with the constitutionality of the City’s seizure of the unattended personal property but with the disposal of the property. Indeed, the district court’s injunction allows the City to continue to seize property where it has “an objectively reasonable belief that it is abandoned.” But it is difficult for the City to determine whether personal items are unattended or abandoned. Furthermore, legitimate concerns for public safety and health require that the City search and remove unattended property on its public sidewalks. I would hold that the fact that a cart is apparently unattended on a public sidewalk where warning signs are prominently displayed allows the City to search and seize the property.

. Much like the cases involving unattended baggage in train stations and airports, the City has an interest in removing carts, bags, and other containers from its sidewalks that may conceal bombs, weapons, biohazards, or drugs. See, e.g., United States v. Gault, 92 F.3d 990, 992 (10th Cir.1996) (reasoning that the defendant's "expectation was not objectively reasonable” where he “left his bag unattended, with no one there to watch it or to protect it from being kicked or lifted”).

. The City states that the "accumulation of things presents significant health and safety problems” and bio-hazardous materials “draw rats and breeds disease.” Plaintiffs do not dispute this fact. While the majority notes that Plaintiffs' carts might have contained personal identification documents, medications, cell phones, and other important personal items (See Maj. Op. at 1024 — 25), these items — when they exist — are often commingled with soiled clothing, dead animals, drug paraphernalia, and other hazardous materials, which pose health and safety problems. It is unduly burdensome on the City workers to have to separate out the potential health and safety hazards from the non-hazardous items. Additionally, the majority seems to suggest that the City may not even open bags or containers to determine whether they contain hazardous materials.

.The majority brushes off the City’s concerns, reasoning that allowing the City to dispose of unattended personal items on its sidewalks would mean that “the government could seize and destroy any illegally parked car.” Maj. Op. at 1029-30, n.8. However, the same health and safety concerns necessitating the immediate destruction of unattended personal property on the sidewalks do not arise with an illegally parked car. Additionally, society still recognizes an ongoing property interest in an illegally parked car that it does not recognize in unattended personal items left on public sidewalks. Thus, the majority's example is a straw man.

. I would find that Plaintiffs have not demonstrated a property interest subject to Fourteenth Amendment protection. However, even if there were such an interest, the breadth of the district court’s order requiring the City to leave notices every time property is seized and to store the property for 90 days is troublesome. First, as property that is seized is unattended on a public sidewalk, it is not clear how the City can leave notices. The direction to do so comes close to being an order to litter. Second, there is no explanation for why the City is compelled to store the property for 90 days rather than a week or some other length of time. These provisions appear to be burdensome to the City and unnecessary to the injunction’s goal of preserving personal property for the owners to collect within a reasonable time.

. Were this case remanded, the district court would have to also carefully consider the balance of hardships and advancement of the public interest under Winter, 555 U.S. at 20-21, 129 S.Ct. 365.